[L.A. No. 30053. In Bank. Jan. 19, 1973.]

WILLIAM A. MILLER et al., Plaintiffs and Appellants, v.
LOS ANGELES COUNTY FLOOD CONTROL DISTRICT et al.,
Defendants and Respondents.

---

**COUNSEL**

Herbert H. Hiestand, Jr., for Plaintiffs and Appellants.

John D. Maharg, County Counsel, Philip S. Miller, Deputy County Counsel, Schell & Delamer, Martin A. Yester and Charles H. Carpenter for Defendants and Respondents.

Harry S. Fenton, Robert F. Carlson, Kenneth G. Nellis and Richard A. Wehe as Amici Curiae on behalf of Defendants and Respondents.

---

**OPINION**

**SULLIVAN, J.**—In this action for damages for personal injuries and for wrongful death, plaintiffs[1] appeal from a judgment of nonsuit in favor of defendants Noble Manors, Inc. (Noble Manors) and A. Anthony Kuri (Kuri) and from an order granting a new trial in favor of defendant Los Angeles County Flood Control District (District).

In 1962, William and Aimee Miller purchased a home on Country Club Drive, within the Sunset Canyon area of the City of Burbank. The home had been built in 1959 by Noble Manors, a corporation responsible for the construction of several houses on the same street.

The City of Burbank maintained Country Club Drive both as a passageway for vehicular traffic and, in times of heavy rain, as a flood control channel. For the latter purpose, the street was designed with 18-inch curbs

---

[1]Plaintiffs are William A. Miller and Meredith Miller, a minor, by and through her guardian ad litem William A. Miller. William is the surviving husband and Meredith the surviving daughter of decedent Aimee Miller.

in order to contain the rainwater that ran through the canyon to the valley below. The Miller home was situated at a 90-degree curve in this street, so that it lay in a direct line with the natural water runoff. At the head of Country Club Drive, defendant District owned and maintained a flood control structure known as the Upper Debris Basin. This dam-like structure, built by the District in 1929 after approval of plans by the Los Angeles County Board of Supervisors, was designed to collect mud and debris which, in times of flood, might endanger lives and property in the city below.

Several events occurring in the early 1960's served to focus attention on the flood dangers in this area. In February 1962, just prior to the Millers' acquisition of their home, floodwaters from the canyon destroyed another home located below plaintiffs' residence on Country Club Drive. In March 1964, a fire substantially denuded the hills above the dam, increasing the flood danger during the upcoming rainy season. The following September, the Public Works Director of the City of Burbank notified the District in a letter that, due to this danger, "it would appear that every effort should be taken to have all debris basins completely empty prior to the approaching rainy season." The District began cleanout operations in late October or early November, and claimed to have completed them by November 9, the date of the accident. However, plaintiffs' witnesses testified that, two days prior to the flood, they had viewed the basin and found that it still contained a substantial amount of mud.

On the morning of November 9, 1964, a rainstorm quickly filled the Upper Debris Basin. A wall of water, mud and debris overflowed, traveling down the canyon to the curve in the street where the Miller home was located. It overran the curbs, smashed through plaintiffs' property and demolished the house. Mr. and Mrs. Miller were carried off by the torrent; he was subsequently saved, after suffering serious injuries, but Mrs. Miller drowned. Their daughter narrowly escaped the flood but thereafter suffered psychological injuries attributed to the accident.

Plaintiffs brought the present action for personal injuries, property damage and wrongful death, asserting liability of defendants as follows: Noble Manors and its president, Kuri, for alleged negligence in the design and construction of the home; the City of Burbank (City), for negligent design of the street and failure to guard against flood; the County of Los Angeles (County), for failing to remedy dangerous flood conditions on County-owned property in the hills: and the District, for negligent creation and maintenance of the debris dam. The complaint also alleged that City, County and the District negligently failed to warn residents of the flood danger.

The cause was tried to a jury. After the presentation of plaintiffs' evidence, the trial court granted a nonsuit in favor of defendants Noble Manors and Kuri on the ground that the evidence did not establish a prima facie showing of negligence. The trial proceeded against the other defendants and the jury returned a verdict awarding the sum of $128,940.20 to plaintiffs against the City and the District, but exonerating the County. The court, however, granted the City's motions for judgment notwithstanding the verdict and for a new trial; it also granted the District's motion for a new trial, but denied the District's motion for a judgment notwithstanding the verdict.

Plaintiffs appealed from the rulings favoring the City, the District, Noble Manors and Kuri. However, they subsequently entered into a compromise settlement with the City and have dismissed their appeal from the judgment notwithstanding the verdict in favor of the City. Thus, we are concerned at this point only with plaintiffs' appeal from the order granting a new trial as to the District, and from the judgment of nonsuit entered in favor of defendants Noble Manors and Kuri.

I

We turn first to plaintiffs' attacks upon the order granting the District a new trial. Our consideration of this issue requires some preliminary observations.

Plaintiffs asserted liability of the District on the following theory of case: that the District owned and maintained the debris basin; that such property was in a dangerous condition and hazardous to property downstream because the debris basin was inadequate; that the District maintained such property with full knowledge of the hazards, negligently failed to remedy the dangerous and defective conditions and negligently failed to provide adequate warning of them. Essentially, plaintiffs' theory of case was bottomed on section 835 of the Government Code.[2] In response the District denied any negligence and in addition asserted as an affirmative defense that it was immune from liability by reason of the provisions of sections

---

[2]Section 835 provides: "Except as provided by statute, a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either: [¶] (a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or [¶] (b) The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition."

830.6,[3] 831,[4] 831.2[5] and 835.4[6] of the Government Code. The trial court instructed the jury as to the liability of the District for a dangerous condition of public property substantially in accordance with Government Code sections 835 and 835.4 and that the District was immune from liability for injury caused by the design of the debris dam substantially in accordance with Government Code section 830.6. The court's instruction requested by defendant reads: "Defendant Los Angeles County Flood Control District may be liable only if you find that the upper Sunset Canyon debris dam was in a dangerous condition on November 9, 1964, due to *maintenance.* Such liability may not be founded solely on the design

[3]Section 830.6 provides: "Neither a public entity nor a public employee is liable under this chapter for an injury caused by the plan or design of a construction of, or an improvement to, public property where such plan or design has been approved in advance of the construction or improvement by the legislative body of the public entity or by some other body or employee exercising discretionary authority to give such approval or where such plan or design is prepared in conformity with standards previously so approved, if the trial or appellate court determines that there is any substantial evidence upon the basis of which (a) a reasonable public employee could have adopted the plan or design or the standards therefor or (b) a reasonable legislative body or other body or employee could have approved the plan or design or the standards therefor."

[4]Section 831 provides: "Neither a public entity nor a public employee is liable for an injury caused by the effect on the use of streets and highways of weather conditions as such. Nothing in this section exonerates a public entity or public employee from liability for injury proximately caused by such effect if it would not be reasonably apparent to, and would not be anticipated by, a person exercising due care. For the purpose of this section, the effect on the use of streets and highways of weather conditions includes the effect of fog, wind, rain, flood, ice or snow but does not include physical damage to or deterioration of streets and highways resulting from weather conditions."

[5]Section 831.2 provides: "Neither a public entity nor a public employee is liable for an injury caused by a natural condition of any unimproved public property, including but not limited to any natural condition of any lake, stream, bay, river or beach."

[6]Section 835.4 provides: "(a) A public entity is not liable under subdivision (a) of Section 835 for injury caused by a condition of its property if the public entity establishes that the act or omission that created the condition was reasonable. The reasonableness of the act or omission that created the condition shall be determined by weighing the probability and gravity of potential injury to persons and property foreseeably exposed to the risk of injury against the practicability and cost of taking alternative action that would not create the risk of injury or of protecting against the risk of injury.

"(b) A public entity is not liable under subdivision (b) of Section 835 for injury caused by a dangerous condition of its property if the public entity establishes that the action it took to protect against the risk of injury created by the condition or its failure to take such action was reasonable. The reasonableness of the action or inaction of the public entity shall be determined by taking into consideration the time and opportunity it had to take action and by weighing the probability and gravity of potential injury to persons and property foreseeably exposed to the risk of injury against the practicability and cost of protecting against the risk of such injury."

capacity of the dam, its location in the canyon, the design of the trash rack, or the fact that the dam was not designed to retain water." (Italics added.)

As previously noted, the jury returned a verdict in favor of plaintiffs and against the City of Burbank and the Los Angeles County Flood Control District for damages aggregating $128,940.20. Judgment was entered on the verdict.

Thereafter the court denied the District's motion for a judgment notwithstanding the verdict but granted its motion for a new trial upon the sole ground of insufficiency of evidence. This appeal by plaintiffs followed.[7]

In its order granting new trial, the court stated, "Reasons for granting the new trial to the District include the following: the only basis on which the District could be held liable to the plaintiffs under the facts of this case would relate to some condition of danger in the debris basin or dam creating it; the District is immune from any liability having to do with its design; the District completely and adequately discharged any obligation it had in the maintenance of the basin and dam as demonstrated by the overwhelming preponderance of the evidence."

Plaintiffs argue that this specification of reasons fails to comply with Code of Civil Procedure section 657, as interpreted by this court in *Mercer* v. *Perez* (1968) 68 Cal.2d 104 [65 Cal.Rptr. 315, 436 P.2d 315], and *Scala* v. *Jerry Witt & Sons, Inc.* (1970) 3 Cal.3d 359 [90 Cal.Rptr. 592, 475 P.2d 864]. We agree.

Code of Civil Procedure section 657 provides in pertinent part: "When a new trial is granted, on all or part of the issues, *the court shall specify the ground or grounds upon which it is granted and the court's reason or reasons for granting the new trial upon each ground stated.*

" . . . . . . . . . . . . . . . . . . ‘

". . . on appeal from an order granting a new trial upon the ground of the insufficiency of the evidence to justify the verdict . . . , *it shall be conclusively presumed that said order as to such ground was made only for the reasons specified in said order . . . .*" (Italics added.)

In *Mercer,* we interpreted this requirement to mean that "the judge must briefly recite the *respects* in which he finds the evidence to be legally inadequate; no other construction is consonant with the conclusive presumption

---

[7]The record discloses no protective cross-appeal by the District from the judgment. (Cal. Rules of Court, rule 3(c); see 5 Witkin, Cal. Procedure (2d ed. 1971) Attack on Judgment in Trial Court, § 117, p. 3694; 6 Witkin, *op. cit. supra,* Appeal, § 349, p. 4324.)

on appeal that the order was made 'only for the reasons specified.' Phrasing the requirement in terms of the codification of the trial judge's power in the second paragraph of the amendments [to § 657] . . . , such an order must *briefly identify the portion of the record* which convinces the judge 'that the court or jury should have reached a different verdict or decision.' " (Fn. omitted.) *(Mercer* v. *Perez, supra,* 68 Cal.2d at p. 116; italics added.) We explained that such a construction was required in order to serve the twofold purpose of the specification requirement: encouraging careful deliberation by the trial court before ruling on a motion for new trial, and making a record sufficiently precise to permit meaningful appellate review. *(Id.* at pp. 112-115.)

In *Scala,* we explained more fully what we meant in requiring that an order " *'briefly identify the portion of the record . . . .' " (Scala* v. *Jerry Witt & Sons, Inc., supra,* 3 Cal.3d at p. 363; original italics.) We struck down the following new trial order which was made on the ground of insufficiency of the evidence: " '[T]here is no sufficient evidence to show that the defendant was negligent and the evidence does show that the plaintiff failed to use ordinary care for his own safety and that that failure was a proximate cause of his injuries.' " *(Id.* at p. 363.) We observed that while *Mercer* did not require the trial judge to cite page and line of the record, it did require more than a mere reiteration of the ground itself. Accordingly, we emphasized in *Scala* that ". . . a specification of reasons phrased, as here, in terms of such 'ultimate facts' as defendant's freedom from negligence and plaintiff's guilt of contributory negligence frustrates rather than promotes the legislative purpose of facilitating meaningful appellate review of the order granting a new trial, and hence is inadequate to comply with the mandate of . . . section 657." *(Id.* at pp. 369-370; fn. omitted.)

A further example of inadequate specification is found in *Van Zee* v. *Bayview Hardware Store* (1968) 268 Cal.App.2d 351 [74 Cal.Rptr. 21], cited with approval in *Scala.* In that case, the plaintiff sued for injuries caused by an allegedly defective aerosol paint can. After verdict for the plaintiff, the court granted the defendant a new trial. The ground of insufficiency of the evidence was supported by the following specification of reasons: " '[T]he evidence is insufficient to support the verdict in that the evidence does not establish that the Zynolyte aerosol paint can was defective at any time prior to the delivery of said can to the possession of the Plaintiff.' " *(Id.* at p. 358.) The Court of Appeal reversed the order granting a new trial, holding the specification of reasons to be inadequate, since it merely stated the failure to prove the ultimate fact in the case. "[W]here the ground is insufficiency of the evidence, the purposes

of the statute frequently can be satisfied only if the reviewing court and the parties to the action are given more than a statement which declares that they have failed to prove the ultimate fact which they were required to establish." (*Id.* at p. 360.)

Turning to the case before us, we find the reasons stated in the order granting a new trial to be no more specific than those given in *Scala* or *Van Zee*. At the outset it is manifest that only the last clause of the above-quoted specification actually purports to state a reason. The first two clauses, echoing the trial court's instruction on design immunity (see text following fn. 6, *ante*), point out merely that the basis of the District's liability must be the maintenance as distinguished from the design of the dam. The statement in the last clause that "the District completely and adequately discharged any obligation it had in the maintenance of the basin and dam as demonstrated by the overwhelming preponderance of the evidence" is simply another way of saying that plaintiffs failed to prove the ultimate fact which they were required to establish. This "reason" fails to identify which aspects of the evidence convinced the trial judge that the District had properly discharged its duty of maintenance.

For example, the trial judge may have believed the testimony of the District's employees that the debris basin had been cleaned out by the date of the accident. If so, review could have focused on the adequacy of that testimony. Alternately, the judge may have disbelieved plaintiffs' witnesses, a pair of young boys who allegedly viewed the basin two days before the accident and found it filled with mud. If that was the basis for the judge's reasoning, then it should have been stated, along with the reasons for disbelieving or otherwise rejecting the boys' testimony.[8] Finally, the trial court may have determined that the District, by sending a crew

---

[8]District argues that the trial judge did, in effect, specify the latter reason elsewhere in the same order. In denying District's motion for a judgment notwithstanding the verdict, the judge noted the weak testimony of plaintiffs' witnesses on whether the debris basin had been cleaned out. However, the statement of reasons for the new trial order makes no reference to any other portion of the order.

In *Mercer* v. *Perez, supra,* 68 Cal.2d 104, we noted that prior to the 1965 amendments to section 657 (requiring a specification of reasons where none had existed before) an appellant "had no way of knowing which portions of the proof were deemed inadequate and required justification before the reviewing court. The latter, in turn . . . could find itself considering alleged insufficiences totally unrelated to those relied upon by the trial judge . . . ." (*Id.* at p. 114.) The requirement that the judge specify his reasons was intended to correct that procedure. Yet, if the District's argument were accepted, an appellate court would be required to guess at other portions of the order that could conceivably be incorporated into the specification of reasons supporting the ground of insufficiency of the evidence. As the above excerpt from *Mercer* demonstrates, the amendments to section 657 were intended to preclude just this type of guesswork.

of men to clean out the basin, had done all that was reasonably necessary to maintain it, and that the fact that such work was not completed by the date of the accident did not negate the reasonableness of the District's action. (See Gov. Code, § 835.4, subd. (b).) A statement to this effect would have drawn attention to the testimony relating to the efforts of the District's maintenance crew and the notice to the District of the imminent danger of flood.

■ Since "it shall be conclusively presumed that said [new trial] order as to such ground was made only for the reasons specified" (Code Civ. Proc., § 657), and the ground of insufficiency of the evidence is unsupported by a proper specification of reasons, we conclude that the order granting a new trial must be reversed. Consequently the judgment in favor of plaintiffs and against the District will be automatically reinstated. (*Mercer* v. *Perez, supra,* 68 Cal.2d at pp. 118-124.) ■ As previously pointed out, we are presented with no cross-appeal by the District from such judgment. Its finality, therefore, upon reinstatement will automatically follow.

## II

We turn now to consider plaintiffs' appeal from the judgment of nonsuit in favor of Noble Manors, the firm that built the Miller home.[9] In reviewing the judgment, we are careful to apply longstanding rules governing nonsuits which require us to view the evidence in the light most favorable to the plaintiffs and to disregard conflicting evidence on behalf of defendant. ■ Only if, after indulging in every legitimate inference favorable to plaintiffs, we find that there is no evidence of sufficient substantiality to support a verdict in plaintiffs' favor, can we uphold the judgment of nonsuit. (*Stanford* v. *City of Ontario* (1972) 6 Cal.3d 870, 874, fn. 1 [101 Cal.Rptr. 97, 495 P.2d 425]; *Estate of Callahan* (1967) 67 Cal.2d 609, 612 [63 Cal.Rptr. 277, 432 P.2d 965].)

Plaintiffs argue that the evidence presented to the trial court was sufficient to support a verdict in their favor on two theories: (1) That Noble Manors was negligent in constructing the home and this negligence caused plaintiffs' injuries; and (2) that Noble Manors should be held strictly liable for plaintiffs' injuries caused by the defective condition of the house.

Plaintiffs' theory of negligence alleges failure of Noble Manors, through its president, Kuri, to take reasonable steps to guard against destruction

---

[9]Although the trial court entered its judgment of nonsuit in favor of both Noble Manors and its president, Kuri, plaintiffs do not contend on appeal that the court erred in granting the nonsuit as to the latter.

of the home in case of flood. Plaintiffs called several witnesses to establish the allegedly faulty construction.[10] William Bush, a former right-of-way appraiser for the City of Burbank, testified that, considering the location of the Miller home, the potential danger of flood would have reduced its market value. Mr. O'Hanlon, the designer of the house, and Kuri both testified that they were aware that Country Club Drive was a natural drainage channel, yet neither took steps to guard against potential floods.

Plaintiffs' principal witness was Neil Stiver, a mechanical engineer with training in hydraulics and hydrology. Mr. Stiver was familiar with the characteristics of flooding in hillside areas, having gained experience by working for another flood control district. In addition, he had investigated the Miller lot in 1965 (after the flood) for another company in order to see if similar destruction could be prevented and the lot rebuilt.

Plaintiffs' counsel attempted to qualify Stiver as an expert on the reasonable construction practices of builders in the area.[11] Finally, after a lengthy attempt to lay the proper foundation, plaintiffs' counsel asked Stiver if he had an opinion as to whether a reasonably prudent builder in Southern California, taking into account the topography of the area and the location of the Miller home, would have utilized a retaining wall as a portion of the design for the structure. The trial court sustained an objection to the question on the ground that Stiver was not qualified to render an expert opinion on the subject. At the same time, it granted Noble Manors' motion for nonsuit on the ground that "[t]here is no case here against the defendant, Noble Manors . . . ."

Plaintiffs argue first that the trial court erred in failing to allow their expert witness to testify as to what a reasonable builder would have done under the circumstances. If this testimony were allowed, plaintiffs would have established a prima facie case against Noble Manors and the nonsuit would be improper.

---

[10]Witnesses Bush, Kuri and O'Hanlon were called by plaintiffs to testify as adverse witnesses under Evidence Code section 776. It has long been a rule in this state that, on appeal from a nonsuit rendered against them, plaintiffs may rely on that portion of testimony given under section 776 (and its predecessor, Code Civ. Proc., § 2055) which is favorable to them, and disregard that which is unfavorable. (*Anthony* v. *Hobbie* (1945) 25 Cal.2d 814, 818-819 [155 P.2d 826]; *Crowe* v. *McBride* (1944) 25 Cal.2d 318, 319 [153 P.2d 727]. Thus, we consider only that portion of the aforementioned witnesses' testimony that is favorable to plaintiffs.

[11]Plaintiffs' counsel, on the court's request, made the following offer of proof: ". . . Mr. Stiver would offer to prove that in 1959, as he views this property at 949 Country Club Drive, at the time that it was graded for building and viewed the canyon as he has described it already, the topography of it, he believes that as a reasonably prudent builder, a reasonably prudent builder in Southern California would have utilized a retaining wall in the design of the structure and would have elevated it off of the ground because of its location."

We are unable to accept this argument. To determine that a witness qualifies as an expert the judge must ascertain "if he has special knowledge, skill, experience, training, or education sufficient to qualify him as an expert on the subject to which his testimony relates." (Evid. Code, § 720, subd. (a).) ■ As we said in *Huffman* v. *Lindquist* (1951) 37 Cal.2d 465, 476 [234 P.2d 34, 29 A.L.R.2d 485]: "It is for the trial court to determine, in the exercise of a sound discretion, the competency and qualification of an expert witness to give his opinion in evidence [citation], and its ruling will not be disturbed upon appeal unless a manifest abuse of that discretion is shown. [Citations.]" (See also *Sinz* v. *Owens* (1949) 33 Cal.2d 749, 755-766 [205 P.2d 3, 8 A.L.R.2d 757].)

■ After reviewing the record in the instant case, we are unable to say that the trial court abused its discretion. At one point, Stiver testified that he had observed the construction of several hundred residential developments in hillside areas such as Sunset Canyon. Nevertheless, under examination by plaintiffs' counsel[12] he indicated no close involvement in the construction of homes and, indeed, an unfamiliarity with building practices. This supports the trial court's ruling that he was not qualified to express an opinion in response to counsel's question.

In a second, but related attack on the nonsuit, plaintiffs next argue that the trial court erred by requiring expert testimony as to the practices of builders in the area in order to establish the proper standard of care applicable to Noble Manors. The record discloses that the trial judge granted the motion for nonsuit because plaintiffs had failed to present evidence as to this essential ingredient of their case.[13] Plaintiffs complain

---

[12]"Q. With reference to the builders, did you develop a familiarity as to the factors as to what a reasonably, prudent builder would use in putting up the walls of a residential structure . . . in a hill area in which there was a flood hazard?

"A. I don't think particularly in speaking of it in the terms that you are putting it. *"I don't think that I paid any particular attention in respect to this particular one or that particular one as being in a flood hazard area.*

"The only time it would have been on my mind is in case that something definite was happening or had happened like, for instance, we started on tracts in which floods have occurred and we have had part of the tract washed out and had to go back and redo that particular part of the area; *but those are special cases. Those are not general cases by any manner of means.*

"Q. And in a specific instance like that would one of your duties be to design specific or recommend structures that would withstand future flood hazards?

"A. Normally it would be the civil engineer's responsibility for that particular tract to take care of all drainage type of structures and size of structure." (Italics added.)

[13]In granting the motion for nonsuit, the trial judge stated: "Now, as to whether or not a standard of care required one in Noble Manor's position in 1959, required a different type of construction is something esoteric. I do not know what it is and the jury doesn't know what it is."

A review of the evidence and of the judge's remarks reveals that the nonsuit was

that, by requiring expert testimony on this subject, the court erroneously applied a "malpractice" standard to this case rather than a negligence standard. Under the latter standard, it is urged, the court should have allowed the jury to determine from their own common experience whether or not Noble Manors acted reasonably in failing to protect the home against flood.

■ In *People* v. *Cole* (1956) 47 Cal.2d 99, 103 [301 P.2d 854, 56 A.L.R.2d 1435], we stated that "the decisive consideration in determining the admissibility of expert opinion evidence is whether the subject of inquiry is one of such common knowledge that men of ordinary education could reach a conclusion as intelligently as the witness or whether, on the other hand, the matter is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact." (See also *Kastner* v. *Los Angeles Metropolitan Transit Authority* (1965) 63 Cal.2d 52, 57 [45 Cal.Rptr. 129, 403 P.2d 385].[14] It is settled that "an expert opinion is not inadmissible merely because it coincides with an ultimate issue of fact." (*People* v. *Polk* (1964) 61 Cal.2d 217, 233 [37 Cal.Rptr. 753, 390 P.2d 641]; Evid. Code, § 805.) ■ If the matter in issue is one within the knowledge of experts *only* and not within the common knowledge of laymen, it is necessary for the plaintiff to introduce expert opinion evidence in order to establish a prima facie case. (See *Huffman* v. *Lindquist, supra,* 37 Cal.2d at pp. 473, 474-475; *Lawless* v. *Calaway* (1944) 24 Cal.2d 81, 88-89 [147 P.2d 604]; *Truman* v. *Vargas* (1969) 275 Cal.App.2d 976, 982-983 [80 Cal.Rptr. 373].)

Applying the above principles to the instant case we are satisfied that it was not for nonexpert minds to determine whether Noble Manors failed to exercise due care in the construction of the home. Building homes is a complicated activity. The average layman has neither training nor experience in the construction industry and ordinarily cannot determine[15]

---

grounded solely upon the plaintiffs' failure to establish by expert testimony that the conduct of Noble Manors deviated from the standard of practice in the community. There is no indication that the court was dissatisfied with evidence presented by the plaintiffs as to the mediate facts in the case, such as the grade of the street or the position of the home. Thus, our discussion focuses on whether the court erroneously required expert testimony on the standard of care to be applied to Noble Manors.

[14]This same rule was eventually codified in Evidence Code section 801: "If a witness is testifying as an expert, his testimony in the form of an opinion is limited to such an opinion as is: [¶] (a) Related to a subject that is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact . . . ."

[15]We exclude from consideration those failures on the part of the builder which are so obvious, if not bizarre, that they present no problem in the determination of his negligence, as for example the installation of a fireplace without a chimney or of a second floor without any means of access to it.

whether a particular building has been built with the requisite skill and in accordance with the standards prescribed by law or prevailing in the industry. ■ In the instant case, the issue as to whether or not the Miller home had been negligently constructed involved a multitude of subsidiary questions bearing not only upon the erection of the structure itself but also upon the location of the house on the particular lot, the elevation of the lot, the influence of the surrounding terrain, the possibility of run-offs and floods, and the existence of the debris dam. These were not questions which the jury could have resolved from their common experience and the trial judge properly concluded that the issue of the allegedly negligent construction of the Miller residence was one within the knowledge of experts only.[16]

Plaintiffs failed to present any competent expert opinion evidence on this issue. As we have seen, the witness, Stiver, was never properly qualified as an expert. Mr. Bush stated merely that the danger of a flood would have reduced the value of the Miller property—a point actually having no relevancy on the issue of negligence. It is noteworthy that when plaintiffs' efforts to examine Bush on construction practices were blocked by defendant's objections, plaintiffs conceded the point. Witnesses Kuri and O'Hanlon, as builder and designer, respectively, of the Miller home, were presumably qualified to testify as to building practices in the area, but were not questioned on this point by plaintiffs' counsel ■ Thus, lacking the requisite expert testimony, plaintiffs failed to prove an essential element of their case—the standard of care applicable to Noble Manors— and the nonsuit was proper as to the theory of negligence.

Nor did plaintiffs establish a prima facie case under the theory of strict liability for the allegedly defective design and construction of the home. ■ Strict liability in tort does not apply unless the product (in this case, the home) allegedly causing the injury was in a defective condition. (*Cronin* v. *J.B.E. Olson Corp.* (1972) 8 Cal.3d 121, 130 [104 Cal.Rptr. 433, 501 P.2d 1153]; *Greenman* v. *Yuba Power Products, Inc.* (1963) 59 Cal.2d 57, 62 [27 Cal.Rptr. 697, 377 P.2d 897, 13 A.L.R.3d

---

[16]Plaintiffs contend that *Sabella* v. *Wisler* (1963) 59 Cal.2d 21 [27 Cal.Rptr. 689, 377 P.2d 889], supports their argument that expert testimony should not have been required. The contention lacks merit. First, in *Sabella,* we did not discuss or even indicate whether expert testimony had been introduced. Second, in upholding the trial court's finding that the defendant-contractor was negligent, we noted the applicable standard of care to be that of " 'reasonably prudent persons' *in his* [the contractor's] *position* . . . ." (*Id.* at p. 25.) In short, we there found sufficient evidence that the defendant had failed to exercise the care of a reasonable contractor.

1049].) ■ The burden is upon the plaintiff to establish the defective condition of the product and to prove that the defect proximately caused plaintiff's injury. (*Grinnell* v. *Charles Pfizer & Co.* (1969) 274 Cal.App.2d 424, 435 [79 Cal.Rptr. 369]; *Preston* v. *Up-right, Inc.* (1966) 243 Cal. App.2d 636, 639 [52 Cal.Rptr. 679].)

■ Plaintiffs failed to offer any competent evidence that the home was in a defective condition at the time of the flood. We have already explained that, since the jury could not determine from common experience whether Noble Manors had acted negligently, the lack of admissible expert testimony on the standard of care dictated a nonsuit as to the theory of negligence. For the same reason, the jury was incapable of determining without the aid of expert testimony that the house was defective. As we have seen, plaintiffs presented no expert testimony whatsoever as to the existence of a defect in the house.[17]

In sum, viewing the evidence in the light of the settled rules governing nonsuits, we are satisfied that plaintiffs failed to introduce sufficient evidence against defendants Noble Manors, Inc. and A. Anthony Kuri either on a theory of case based on negligence or on a theory of case based on strict liability in tort. We conclude that the nonsuit was justified.

The judgment of nonsuit in favor of defendants Noble Manors, Inc. and A. Anthony Kuri is affirmed. The order granting a new trial is reversed. Plaintiffs shall recover from defendant District costs on their appeal from the order granting a new trial; defendants Noble Manors, Inc. and A.

[17]Plaintiffs rely upon *Avner* v. *Longridge Estates* (1969) 272 Cal.App.2d 607 [77 Cal.Rptr. 633], and *Kriegler* v. *Eichler Homes, Inc.* (1969) 269 Cal.App.2d 224 [74 Cal.Rptr. 749], to support their establishment of a prima facie case on strict liability. While both cases involved the construction of homes (defendant in *Avner* was a "manufacturer of lots" in hillside residential development areas), they are distinguishable from the instant one. In *Kriegler*, there was sufficient evidence that the heating system was defective. (*Kriegler* v. *Eichler Homes, Inc., supra*, 269 Cal.App. 2d at p. 226.) In *Avner*, the trial court had dismissed, without leave to amend, plaintiffs' cause of action for strict liability on the ground that " 'there is no doctrine of strict liability as to the manufacture of residential lots.' " (*Avner* v. *Longridge Estates, supra*, 272 Cal.App.2d at p. 609.) The Court of Appeal reversed, in effect holding that plaintiffs should have been allowed to prove the alleged defects in grading the lot that would support strict liability. (*Id.* at p. 615.)

Anthony Kuri shall recover from plaintiffs their costs on plaintiffs' appeal from the judgment of nonsuit.

Wright, C. J., McComb, J., Tobriner, J., Mosk, J., and Burke, J., concurred.

The petition of respondent District for a rehearing was denied March 1, 1973, and the opinion was modified to read as printed above.