948 P.2d 492

AA MECHANICAL, an Arizona business entity, and Dwayne Kramer, Petitioners,

v.

SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF MARICOPA, the Honorable Brian R. Hauser, a judge thereof, Respondent Judge,

Robert VREE, M.D. and Judy Vree, husband and wife, Real Parties in Interest.

DEVENNEY ARCHITECTS, LTD., a subsidiary of Hofmann–Dietz Architects, Ltd., Petitioner,

v.

SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF MARICOPA, the Honorable Brian R. Hauser, a judge thereof, Respondent Judge,

Robert VREE, M.D. and Judy Vree, husband and wife, Real Parties in Interest.

Nos. 1 CA–SA 96–0239, 1 CA–SA 97–0012.

Court of Appeals of Arizona, Division 1, Department C.

Nov. 18, 1997.

Review Denied March 17, 1998.*

* Martone, J., voted to grant review. McGregor, J., did not participate.

Douglas, Bustamante & Ricker by Keith R. Ricker, Phoenix, for Petitioner AA Mechanical.

Jackson White Gardner & Decker, P.C. by Roger R. Foote, Mesa, for Petitioner Devenney Architects, Ltd.

Robbins, Shumway & Foreman by Joel B. Robbins and Brock Heathcotte, Phoenix, for Respondents.

## OPINION

KLEINSCHMIDT, Judge.

The real parties in interest, Robert and Judy Vree, sued both AA Mechanical and Devenney Architects, among others, alleging that Robert Vree was injured by environmental toxins caused by the defendants' negligent design and construction of the building in which Vree worked. The Petitioners filed separate motions to dismiss which asserted,

in part, that the Vrees failed to comply with Arizona Revised Statutes Annotated ("A.R.S.") section 12–2602. The Petitioners seek special action review of the trial court's denial of these motions to dismiss.

■ Section 12–2602 requires a party asserting a claim against a registered professional or contractor to submit an expert's affidavit with the complaint attesting to the acts that gave rise to the claim and how they caused damage. The Petitioners assert that the Vrees failed to meet such requirements. Another panel of this court has recently held, in *Hunter Contracting Co. v. Superior Court*, 190 Ariz. 318, 947 P.2d 892 (App.1997), that A.R.S. section 12–2602 "infringes on the fundamental right of action," does not survive a strict scrutiny analysis, and is therefore unconstitutional. We agree that *Hunter* is correct, and it disposes of the Petitioners' claims based on section 12–2602.

■ The dissent criticizes *Hunter* for "put[ting] review into the fatal category of strict scrutiny by extending the intended reach" of A.R.S. section 12–2602 to include "simple" negligence as well as "professional" negligence. The dissent draws a distinction the statute neither mentions nor supports. For example, the alleged negligence in *Hunter*—leaving a barricade lying in the road— was both "simple" and "professional." One of the common professional duties of a general contractor is to keep the work site safe. *See, e.g., Lewis v. N.J. Riebe Enterprises, Inc.*, 170 Ariz. 384, 388, 825 P.2d 5, 9 (1992); *Cohen v. Salt River Project*, 153 Ariz. 326, 330, 736 P.2d 809, 813 (App.1987). In any event, the case before us is indisputably within the reach of the statute because the alleged negligence was professional in nature.

■ The dissent concludes that A.R.S. section 12–2602 does not infringe on a fundamental right, and is thus not subject to a strict scrutiny analysis, which the dissent concedes the statute cannot survive. This puts the cart before the horse. In *Kenyon v. Hammer*, 142 Ariz. 69, 688 P.2d 961 (1984), the supreme court said that the right to bring an action to recover for damages is a fundamental right. Any statute that in-fringes on that right is subject to strict scrutiny. The legislative hurdle section 12–2602 erects is no less an infringement than was the restrictive statute of limitations the supreme court was dealing with in *Kenyon.* The whole purpose of A.R.S. section 12–2602 is to infringe on the right to bring a claim.

■ The remaining issue is whether the service of the complaint on AA Mechanical was timely. It is undisputed that the original complaint was filed on November 17, 1995, and that AA Mechanical was served on March 18, 1996. Rule 4(i), Arizona Rules of Civil Procedure, requires service of the summons and complaint to be made upon a defendant within 120 days after the filing of the complaint. AA Mechanical asserts that the 120 days should include the day the complaint was filed and that the 120th day fell on Friday, March 15, 1996. We disagree.

Rule 6(a), Arizona Rules of Civil Procedure, states that "[i]n computing any period of time prescribed or allowed by these rules, . . . the day of the act, event or default from which the designated period of time begins to run shall not be included." Thus, the day of filing, November 17, 1995, does not count and the last day for service would then be Saturday, March 16, 1996. Rule 6(a), however, excludes weekends and holidays from being counted as the last day of a time period and therefore Monday, March 18, 1996, was the last day for timely service. *See Maciborski v. Chase Service Corp.*, 161 Ariz. 557, 560, 779 P.2d 1296, 1299 (App.1989) (first day is excluded when computing time in which an act is required to be done). The trial judge's ruling that the complaint was timely served was proper.

For the reasons set forth above, review is granted but relief denied.

GRANT, J., concurs.

THOMPSON, Presiding Judge, dissenting.

While I agree with the result this court reached in *Hunter Contracting Co. v. Superior Court*, 190 Ariz. 318, 947 P.2d 892 (App. 1997), I do not agree with its analysis, and I do not agree that A.R.S. § 12–2602 is unconstitutional. In my view, the *Hunter* opinion imprudently extended the intended reach of

the statute which resulted in the conclusion that it infringed on the fundamental right to pursue a damage action. This stretch put review into the fatal category of strict scrutiny. Once the weapon of strict scrutiny was brought to bear, this statute was, as they say, history.

The cases before us here are fundamentally distinct from the facts of *Hunter*. Because of these differences, § 12–2602 should have been applied to require appropriate affidavits from the Vrees, and the Vrees' failure to supply the affidavits should have resulted in dismissals of these cases. It is my opinion that our constitution does not forbid the application of the statute to the Vrees.

In *Hunter*, a motorist struck a barricade which employees of a barricade company left lying in the street near a construction site. 190 Ariz. at 319, 947 P.2d at 893. The motorist sued the barricade company and Hunter Contracting Co. (Hunter), the general contractor on the construction project. *Id.* at 319–20, 947 P.2d at 893–94. Hunter moved to dismiss pursuant to § 12–2602 based on the lack of an expert affidavit detailing Hunter's alleged negligence. *Id.* Although it is obvious that the action against Hunter did not involve professional negligence but rather ordinary negligence, and that no expert would be required to prove negligence under our existing rules, both the trial court and this court construed the statute as impermissibly requiring an expert's affidavit filed contemporaneously with the complaint. *Id.*

Here, the Vrees' actions against petitioners plainly allege the failure to meet the peculiar standards of care applicable to contractors and architects respectively. Unlike *Hunter*, these cases involve the very kind of actions to which the legislature intended this law to apply. But as did the panel which·decided *Hunter*, the majority here has failed to do its duty to construe this statute consistent with legislative intent and with our constitution.

This court has previously acted under the belief that "we *must* consider whether a limiting construction could be placed on the statute to cure the constitutional infirmity." *State v. Steiger*, 162 Ariz. 138, 145, 781 P.2d 616, 623 (App.1989) (emphasis added). And

yet in *Hunter* there is not a glimmer of this important doctrine of judicial deference to the policy-making prerogatives of the legislature.

Because it leads to strict scrutiny analysis, the finding that § 12–2602 "infringes on a state constitutional right" dooms the statute. *Hunter* sets forth four ways in which § 12–2602 assertedly "infringes" on the right to bring lawsuits.

The first of these, the *Hunter* court claims, is that under the statute "a plaintiff must hire an expert even when none would otherwise be required." This fundamentally and fatally misreads § 12–2602, which requires that "[a] party that asserts a *claim* against a registered professional or contractor shall file an affidavit with the claim." (Emphasis added.) Nowhere in *Hunter* will the reader find the statutory definition of *claim*, which appears at § 12–2601(1): " 'Claim' means a legal action in tort brought ... against a registered professional or contractor *based on the registered professional's or contractor's alleged negligence, misconduct, errors or omissions in rendering professional services ....*" (Emphasis added.) It is obvious from this definition of "claim" that it is only claims brought against professionals and contractors *as professionals and contractors* that require affidavits. The *Hunter* court's assumption that an expert is required under the statute for any claim against a professional or contractor whether simple or professional negligence is asserted would render the highlighted portion of the definition of "claim" utterly superfluous, and its misreading, in my view, completely wipes out *Hunter*'s premise. Indeed, the only plausible explanation for the legislative inclusion of the highlighted language would be to make it abundantly clear that the affidavit requirement does not apply to *every* claim brought against a professional or contractor, but *only* to claims alleging professional negligence.

The appellate courts of other states have no problem appreciating this distinction which is as explicit in our statute as it is in similar statutes elsewhere, including that enacted in Georgia. *See* Ga.Code Ann. § 9–11–9.1. In *Razete v. Preferred Research, Inc.,*

197 Ga.App. 69, 397 S.E.2d 489 (1990), a case cited in *Hunter* for the proposition that "other such laws provide exceptions to the expert evidence requirement," 190 Ariz. at 321, n. 2, 947 P.2d at 895, n. 2, the Georgia Court of Appeals noted that the statute requiring an affidavit in "any action for damages alleging professional malpractice" failed to "limit or define or restrict what service shall be deemed 'professional'" and the court then proceeded to explain that no affidavit was required in a case where the alleged negligence consisted of a failure to staple, to the rest of a title report, the last page of the report showing liens on the subject real property, notwithstanding that the claim was brought against a professional. *Id.* 397 S.E.2d at 490. Based on the same obvious distinction, plaintiffs do not need affidavits when a doctor burns a patient with a lamp during surgery (*Jones v. Bates*, 261 Ga.240, 403 S.E.2d 804 (1991)), or when a mental health counselor prescribes a perverse mental health treatment regimen requiring the patient to wear the counselor's clothes while the counselor dons the patient's and then whips him (*Roebuck v. Smith*, 204 Ga.App.20, 418 S.E.2d 165 (1992)), or when nurses fail to hold their patient up while examining her, allowing her to fall down on the floor and break a hip (*Flowers v. Memorial Med. Ctr., Inc.*, 198 Ga.App.651, 402 S.E.2d 541 (1991)). The Georgia statute was designed to prevent

> "frivolous or unsuitable actions," i.e., professional malpractice actions in which the plaintiff cannot prove by expert opinion that a professional standard or practice has been violated.... [W]here ... plaintiff can prove negligence or breach without proof of a customary procedure and violation of it, the case is not a professional malpractice case and [the statute] does not apply to require an "expert's affidavit."

*Razete*, 397 S.E.2d at 490.

Our statute has its origin in similar sentiments. Our legislature clearly intended, by enacting § 12–2602, to reduce the incidence of frivolous lawsuits against registered professionals and licensed contractors by requiring plaintiffs to make individualized and informed determinations when naming defendants. Senate committee minutes reflecting legislative consideration of this provision include this summary of one testimonial:

> the proposed legislation is a result of architects, engineers and other design professionals being joined in many frivolous civil lawsuits, instigated many times by plaintiff attorneys that name everyone involved with a construction project as defendants. By way of example ... an architect, wrongfully named in a civil lawsuit regarding defective and inadequate construction, who had to spend $8,000 to be dismissed from a lawsuit that had nothing to do with his architectural services.

Another witness testified that 80–90% of all design professionals work in small businesses and that defending a single frivolous claim could destroy a small business's financial outlook for the year.

The California certificate of merit statute, Cal. Civ. Pro.Code § 411.35, which is very similar to our statute and likely served as a model for it, "was enacted to discourage the filing of frivolous lawsuits" based on claims of the professional negligence of architects, engineers or land surveyors. *Ponderosa Ctr. Partners v. McClellan*, 45 Cal.App.4th 913, 915, 53 Cal.Rptr.2d 64 (1996). The objective of the statute

> is to require a plaintiff to obtain independent support of the merits of his action prior to serving defendant.... In most professional malpractice cases, it cannot be established that the defendant's conduct fell below the applicable standard of care without the testimony of an expert familiar with that standard .... [however] the Legislature did not intend to require consultation with experts when their testimony will not be necessary to establish liability.

*Ammon v. Superior Court*, 205 Cal.App.3d 783, 790, 252 Cal.Rptr. 748 (1988) (citations omitted). Thus, California, as with Georgia and other states, sensibly and by judicial interpretation applies the affidavit requirement only to claims of professional negligence which require expert support, and reads the certificate of merit statute such that it is not extended to cases beyond the clear scope of legislative concern. *See also*

*Boigegrain v. Gilbert,* 784 P.2d 849, 850 (Colo.Ct.App.1989) (despite statutory language apparently requiring an affidavit, expert opinion not necessary to establish standard of acceptable professional conduct when deviation is "clear and palpable"); *Martinez v. Badis,* 842 P.2d 245, 251 (Colo.1992) (notwithstanding broad statutory language, affidavit not required where expert not required).

In my opinion, the *Hunter* court failed to recognize our legislature's careful delineation that only claims of professional negligence were affected by the affidavit requirement, assumed that the affidavit requirement applied to a claim of simple negligence in allowing barricades to lie in a roadway, and then easily knocked over the straw man thus created. *Of course,* expert testimony is needed only where the subject matter of the claim involves special and technical information. The motorist in *Hunter* did not need an expert to prove that it is careless to leave bulky objects in a roadway, and he did not need an affidavit either.

By contrast, the Vrees must have an expert to get to the jury under our rules of procedure, because unlike Mr. Grandinetti (the motorist in *Hunter*), they allege that petitioners violated a professional standard of care and committed professional negligence. The Vrees do not contend that they can prove their case without an expert and indeed hired at least two of them. Similarly, under the statute, the Vrees, unlike Mr. Grandinetti, were required to file affidavits.

The *Hunter* court also determined that § 12–2602 infringes upon the right to recover damages for injuries by "restrict[ing] the plaintiff's choice of experts," in that, assertedly, "[i]n cases not governed by this statute, plaintiffs seeking experts are not restricted to those who practice in the same discipline as the defendant." *Hunter,* 190 Ariz. at 321, 947 P.2d at 895. Again I must disagree. Our cases impose the same qualitative limitations regarding the substance of expert testimony as this statute intends.

In *Woodward v. Chirco Constr. Co.,* 141 Ariz. 520, 687 P.2d 1275 (App.1984), regarding a professional negligence claim against the builder of a home damaged by soil subsidence, the court rejected the testimony of an engineer who was qualified as an expert on soil conditions but not on construction practices. While the engineer could opine as to the soil conditions underlying the home and that the soil conditions caused plaintiffs' damages, he could not answer the "pivotal question" involving the intricacies of home construction in differing soils: "would a reasonable builder in Tucson have obtained a soil test prior to construction?" 141 Ariz. at 522, 687 P.2d at 1277. The court reasoned that an engineer is not a home builder, and could not offer the requisite standard of care evidence. The court relied specifically and approvingly on *Miller v. Los Angeles County Flood Control Dist.,* 8 Cal.3d 689, 106 Cal. Rptr. 1, 505 P.2d 193 (1973).

In *Miller,* plaintiffs alleged that professional negligence of a home builder in failing to construct a retaining wall as part of a residential design allowed their home to be flooded with debris from a nearby basin, causing the death of one family member. 106 Cal.Rptr. at 3, 505 P.2d at 195. In support of their suit plaintiffs offered the testimony of a mechanical engineer who was trained in hydraulics and hydrology, experienced in discerning the characteristics of flooding in hillside areas based on prior employment with a flood control district, and who had in fact, in the course of his regular employment, examined the plaintiffs' lot after the flood to determine whether the lot could be rebuilt without being again destroyed. *Id.* at 8, 505 P.2d at 200. The engineer, who "testified that he had observed the construction of several hundred residential developments in hillside areas" similar to plaintiffs', but had "no close involvement in the construction of homes" or with "building practices," was precluded by the trial court from offering his opinions that a retaining wall should reasonably have been used in the home's structural design and the structure should have been elevated "off of the ground because of its location." *Id.* at 8, 9, 505 P.2d at 200, 201. The California Supreme Court affirmed the trial court's ruling, noting that the engineer's lack of "close involvement" in home construction and "unfamiliarity with

building practices" supported the ruling that the engineer "was not qualified to express" the opinion he was prepared to give. *Id.* at 9, 505 P.2d at 201.

These cases make it clear that judicially developed evidentiary rules preclude an engineer from testifying as an expert against a contractor on a claim of professional negligence, and that § 12–2602 broke no new ground on this topic.

Generally, the *Hunter* opinion founders, in my view, in its discussion of these first two purported infringements on the right to bring lawsuits (requiring an expert otherwise unnecessary and restricting the available choices) because the court adopted a stilted reading of the statute rendering it in violation of our constitution, instead of reasonably construing the law in a manner in which it can coexist with the constitution, *as we are supposed to do. See Landgraff v. Wagner,* 26 Ariz.App. 49, 53, 546 P.2d 26, 30 (1976) ("a strong presumption ... favors the constitutionality of acts of the legislature"; court "must be satisfied beyond a reasonable doubt" before declaring statute unconstitutional); *Steiger,* 162 Ariz. at 145, 781 P.2d at 623 (court of appeals "*must* consider" limiting construction of statute to cure constitutional infirmity) (emphasis added). I think it is fair to say that the court in *Hunter,* which did not purport to indulge in any presumption in favor of the constitutionality of § 12–2602 or to consider construing the statute in a way that would not violate the constitution, did neither.

Arizona's appellate courts routinely invoke the doctrine of presumptive constitutionality in the course of construing statutes to save them. For example, in *Schecter v. Killingsworth,* 93 Ariz. 273, 380 P.2d 136 (1963), the supreme court inferred, into a statute which contained no such provision, that the request for a hearing by a motorist whose license was suspended by the Department of Motor Vehicles stayed the suspension, because the statute would otherwise violate due process. In *Mardian Constr. Co. v. Superior Court,* 113 Ariz. 489, 557 P.2d 526 (1976), the supreme court avoided declaring unconstitutional a statute providing for certain preferences in bids on public construction projects by looking at the legislature's purposes in enacting the law and concluding that it did not give preferences to any Arizona resident bidder over any other resident bidder, notwithstanding that the law could have been interpreted as providing for preferences between Arizona bidders, and had been so interpreted by a hearing officer. The court wrote, "we will give the statute a constitutional construction where possible." *Mardian,* 113 Ariz. at 493, 557 P.2d at 530. In *Arizona Downs v. Arizona Horsemen's Found.,* 130 Ariz. 550, 637 P.2d 1053 (1981), the supreme court noted that "the word 'shall' usually indicates a mandatory provision," and then read the word "shall" in a challenged statute as directory only and not mandatory, because to construe the word in its ordinary sense would have imperiled the constitutional viability of the statute. And in *State v. Lycett,* 133 Ariz. 185, 190, 650 P.2d 487, 492 (App.1982), we rejected a void for vagueness and overbreadth challenge to a statute criminalizing involvement in pyramid schemes, which challenge was based on the fact that the language of the statute could have been read to make victims liable as perpetrators. We sensibly construed the statute consistent with legislative intent to sanction only those who encourage others to join pyramid schemes, because "this court has a duty to construe a statute in such a manner that it will be constitutional." *Lycett,* 133 Ariz. at 190, 650 P.2d at 492.

That we must seek to construe a statute in a way that renders it constitutionally permissible is another way of saying that we must presume that the legislature has intended to do the right thing. Hobbes noted that "[a]ll laws, written and unwritten, have need of interpretation," but in the course of such interpretation "the intention of the legislator is always supposed to be equity: for it were a great contumely for a judge to think otherwise of the sovereign." Thomas Hobbes, *Leviathan* Chapter 26 § 8 134–35 (Nelle Fuller ed., Encyclopaedia Britannica, Inc. 1952) (1651). "It is but a decent respect due to the wisdom, the integrity, and the patriotism of the legislative body, by which any law is passed, to presume in favour of its validity, until its violation of the constitution is proved

beyond a 'reasonable doubt.'" *Ogden v. Saunders,* 12 Wheat. 213, 25 U.S. 213, 270, 6 L.Ed. 606 (1827). This same presumption, of the constitutionality of legislative enactments, also reflects that legislatures properly have a voice in interpreting and applying constitutions. Our power of judicial review is not the exclusive mode of determining the constitutionality of statutes. As has been said regarding the relationship of the federal legislature to the courts, "[f]or every statute that the Supreme Court has nullified on constitutional grounds, a score have, on the same grounds, failed of congressional enactment." James Burnham, *Congress and the American Tradition* 114 (1965). There are conscientious voices among legislators who seek to properly attend to the public business in ways that comport with the constitution. That a bill has become law generally reflects some legislative judgment that the statute is constitutional, a notion which is embodied in the presumption of constitutionality which attaches to legislation duly enacted.

The opinion in *Hunter* also held that the statutory requirement of "an affidavit at the outset" of litigation infringed on the right to sue. 190 Ariz. at 321–22, 947 P.2d at 895–96. This requirement indeed could, depending on the facts of any given case, because of an inability to conduct needed discovery, prove to be impractical or impossible for a prospective plaintiff with a meritorious claim to meet. *Kenyon* would preclude application of the "affidavit at the outset" requirement to such a plaintiff. Professionals facing potential claims of negligence should not, I agree, expect to avoid liability by stonewalling reasonable pre-litigation requests for information regarding their professional conduct. In *Hunter* this factor should have had no weight because, as I see it, the statute did not require an affidavit of the plaintiff there. Here the Vrees had the information they needed before they filed the lawsuit; claimants in similar situations frequently do. We could consider the plight of a plaintiff who cannot provide an expert's affidavit due to the unavoidability of needed information when and if such a plaintiff presented such a claim. Such is not present here.

However, it bears noting that the "affidavit at the outset" requirement is entirely germane to the legislative intent in enacting this statute. According to the legislature, registered professionals and contractors are being unfairly burdened by having to defend themselves from too many meritless claims, and the availability of summary judgment at some point in mid-lawsuit is not protecting them. It is precisely those cases which utterly lack merit from the outset that the statute seeks to prevent from becoming an unconscionable burden on conscientious business people. It is by requiring some showing of merit at the commencement of a suit that the legislature sought to address what it had identified as the problem, that is, that it was unfairly costly for professionals and contractors to get themselves out of frivolous lawsuits. While this is a legislative judgment to which I would defer, a skeptic could look at any number of our cases to see how much money it can cost for a registered professional to get out of a meritless lawsuit finally tossed out on summary judgment. *E.g., Resolution Trust Corp. v. Western Technologies, Inc.,* 179 Ariz. 195, 877 P.2d 294 (App.1994) (defendant prevailing on summary judgment and appeal on claim of professional negligence incurred over $65,000 in fees and costs). I cannot say that the "affidavit at the outset" requirement is unwarranted.

Finally, *Hunter* held that the "penalty of dismissal" infringed on the right to sue. Considered analytically apart, as the *Hunter* court considered it, the "penalty of dismissal" no more impermissibly abrogates a cause of action than does the "penalty" of summary judgment, and the granting of summary judgment, although it also bars an action without affording trial on the merits, is surely a constitutional mechanism. *See Morrell v. St. Luke's Med. Ctr.,* 27 Ariz.App. 486, 556 P.2d 334 (1976), in which we rejected a claim that "summary judgment should not be entered in the early stages of malpractice litigation, especially ... when [plaintiff] was unable to secure an expert to testify in support of his complaint." Statutes of limitation "bar" causes of action, and yet do not violate the fundamental right to bring an action. *Rutledge v. State,* 100 Ariz. 174, 180, 412 P.2d 467, 471–72 (1966). The supreme court has found a constitutional violation where a statute required that an action be brought within a time in which it was unlikely and impracti-

cal that the basis for the action could be discovered and presented in court. *Barrio v. San Manuel Div. Hosp. for Magma Copper Co.,* 143 Ariz. 101, 107, 692 P.2d 280, 286 (1984) (statute requiring that action of minor injured when below age of seven be brought before minor reached age ten unconstitutionally abrogated cause of action). However, that a statute prevents a claimant from learning from a prospective defendant of a basis for a cause of action does not mean that the statute has abrogated the cause of action, even where a plaintiff contends that there are no other reasonable alternatives for discovering the information needed to timely prosecute the action. *Humana Hosp. v. Superior Court,* 154 Ariz. 396, 742 P.2d 1382 (App.1987). Though a statute may have the practical effect of barring some actions, this "penalty of dismissal," in and of itself, does not equate to abrogation of a cause of action. It bears repeating that application of § 12–2602 to the Vrees' causes of action here would not have precluded their lawsuits before they had an opportunity to discover the circumstances under which the building they allege is "sick" was constructed, because the Vrees did have such an opportunity.

Once the *Hunter* court, erroneously in my view, determined that § 12–2602 infringed on the fundamental right to bring lawsuits and was to be sustained only upon a showing of a compelling state interest, the resolution of the issue of the statute's constitutionality was a foregone conclusion because the statute could not, if any such statute could, survive "strict scrutiny." Once employed, the effect of such "active review" "is to deny to legislative judgments the deference usually accorded them and to dispense with the general presumption of constitutionality usually given state classifications." *The Constitution of the United States of America, Analysis and Interpretation* 1705 (Johnny H. Killian ed., Library of Congress 1987). Without the presumption of constitutionality, judicial suspicion of legislative attempts to regulate litigation sufficed to quash this particular measure.

Thus, by proceeding to strict scrutiny, the *Hunter* court disallowed the usual scope allowed for differing policy judgments to which legislators may come. To be sure, there is no *compelling* state interest which

necessitated the particular legislative choice reflected in § 12–2602. I wish to express neither approval nor disapproval of the mechanism which the statute sought to require. I only mean to say that the legislature should have been allowed to make the policy decision, and that arguments against the prudence of the measure should have been directed to that body.

In short, I do not agree with the *Hunter* court and the majority here that § 12–2602 is unconstitutional under either the facts of that or this case. The statute had no proper application in *Hunter.* Here, the Vrees needed to hire experts anyway, and they were provided with the information they needed to comply with the affidavit requirement. They did not comply with the statute. Their affidavit regarding AA Mechanical did not sufficiently describe either the pertinent standard of care or the manner in which it was allegedly violated, and the affiant is not in the same field as AA Mechanical. As to Devenney, who was not the general contractor for the building, the Vrees' affidavit failed to demonstrate a breach of the pertinent standard of care. I would grant relief on each petition, and respectfully dissent from the majority opinion.