Opinion
BROWN, J.
In this case, we consider the standard applicable to review of an order granting a motion for a new trial under Code of Civil Procedure section 657 (section 657). Consistent with our prior decisions, we hold that such an order “must be sustained on appeal unless the opposing party demonstrates that no reasonable finder of fact could have found for the movant on [the trial court’s] theory.” (Jones v. Citrus Motors Ontario, Inc. (1973) 8 Cal.3d 706, 710 [106 Cal.Rptr. 28, 505 P.2d 220] (Jones).) Because the Court of Appeal did not apply that highly deferential standard in this case, its judgment must be reversed.
I. Factual and Procedural Background
The parties dispute many factual issues and emphasize different parts of the conflicting evidence in support of their various contentions. We have no reason to summarize the details of these factual contentions. Jeffrey Lane sued Hughes Aircraft Company (Hughes) for breach of contract, breach of the implied covenant of good faith and fair dealing, fraud, race discrimination and retaliation in violation of the Fair Employment and Housing Act (FEHA). (Gov. Code, § 12900 et seq.) Lane, who is African-American, alleged that Hughes failed to promote him to various management positions because of his race and retaliated against him after he complained to Hughes’s human resources department.
David Villalpando sued Hughes for breach of contract, breach of the implied covenant of good faith and fair dealing, intentional infliction of emotional distress and retaliation in violation of the FEHA, claiming Hughes demoted him and constructively discharged him for refusing to write a poor job evaluation of Lane.
At trial, Hughes claimed it had removed Lane from a project known as “RU Band” because of a staffing dispute and that Lane’s performance thereafter deteriorated. Hughes’s witnesses also testified that they did not pressure Villalpando to give a negative report about Lane and that Villalpando did so on his own initiative. Finally, Hughes’s witnesses testified that Hughes did not retaliate against Villalpando.
*410 The jury returned verdicts for both plaintiffs, finding Hughes (1) breached its contracts with Lane and Villalpando by terminating them without good cause and in violation of the implied covenant of good faith and fair dealing, (2) discriminated against Lane because of his race, (3) retaliated against Lane and Villalpando because they reported the discrimination, and (4) constructively discharged Villalpando. The jury also found plaintiffs had “proved by clear and convincing evidence that Hughes . . . was guilty of malice, oppression, fraud or despicable conduct,” thus qualifying them for punitive damages under Civil Code section 3294, subdivision (a). The jury awarded Lane $295,000 for lost wages prior to trial, $2.3 million for future wage loss, and $3.5 million for emotional distress and other noneconomic damages. The jury awarded Villalpando $125,000 for past wage loss, $1.3 million for future wage loss, and $2 million for emotional distress and other noneconomic damages. At the punitive damages phase of the trial, plaintiffs offered evidence that Hughes’s net worth was $1.6 billion. Plaintiffs’ attorney then suggested that the proper measure of punitive damages is 50 percent of a defendant’s total wealth—in this case $800 million. The jury awarded each plaintiff $40 million in punitive damages, for a total award of $89,520,000.
On Hughes’s motion, the trial court granted a judgment notwithstanding the verdict. (Code Civ. Proc., § 629.) Among other findings, the court found (1) the record did not contain substantial evidence supporting Lane’s discrimination and retaliation claims, (2) Hughes never terminated Lane, (3) Hughes did not instruct or force Villalpando to fabricate a poor job evaluation of Lane, (4) Hughes did not retaliate against Villalpando, and (5) Hughes did not constructively discharge Villalpando. The court also specified it was granting judgment notwithstanding the verdict as to damages for future wage loss because both plaintiffs rejected unconditional offers of reinstatement, and as to punitive damages because there was no clear and convincing evidence of malice.
The court alternatively granted a new trial (§ 657), finding that the record contained insufficient evidence of discrimination and retaliation. It also found insufficient evidence to support the damage award. With respect to punitive damages, the court specifically found that (1) passion and prejudice had motivated the jury, (2) the damages did not bear a reasonable relationship to Hughes’s actions or plaintiffs’ injuries, and (3) they were grossly disproportionate to the amount of actual damages. In particular, the court noted the case did not involve racist slurs or a pattern of discrimination. The court also granted a new trial because of legal error, including improperly admitting inflammatory evidence and allowing counsel to argue facts not in evidence and to use inflammatory “buzz words.” The court concluded “defendant’s] witnesses . . . were not liars, cheats or conspirators as indicated by the plaintiff, but were sincere businessmen and engineers. They *411 were not racist or biased and went out of their way to assist Lane and Villalpando.”
Plaintiffs appealed. The Court of Appeal found sufficient evidence in the record to support the jury’s verdict as to liability and compensatory damages, and therefore reversed the judgment notwithstanding the verdict. Nevertheless, the court found the punitive damages excessive, noting that the punitive damages were far greater than the compensatory damages and that the jury did not differentiate between the two plaintiffs. The court concluded that, “[a]s a direct victim of race discrimination, Lane was entitled to a greater award than Villalpando” and reduced Lane’s award from $40 million to $5 million and Villalpando’s from $40 million to $2,830,000. After the reduction, plaintiffs’ total award was $17,350,000.
With respect to the order granting a new trial, the Court of Appeal stated: “[W]e need not consider the trial court’s grant of a new trial on the bases of insufficiency of evidence and excessive compensatory damages, as we already analyzed the record with respect to the judgment notwithstanding the verdicts.” Thus, the appellate court applied the same standard when reviewing the new trial order as when reviewing the judgment notwithstanding the verdict. The court also rejected the trial court’s finding that various legal errors deprived Hughes of a fair trial.
Plaintiffs did not petition for review. Therefore, the Court of Appeal’s decision to reduce the punitive damage awards (and the method it employed in calculating the reduction) is not before us, and we express no opinion about it.
Hughes petitioned for review arguing, among other things, that the Court of Appeal improperly applied the same standard when reviewing the new trial order as when reviewing the judgment notwithstanding the verdict. Hughes did not challenge the Court of Appeal’s ruling with respect to the judgment notwithstanding the verdict. We granted review and transferred the case back to the Court of Appeal with directions to reconsider in light of Neal v. Farmers Ins. Exchange (1978) 21 Cal.3d 910, 932-933 [148 Cal.Rptr. 389, 582 P.2d 980] (Neal) and Jones, supra, 8 Cal.3d 706, 710-711, decisions in which we articulated a highly deferential standard under which new trial orders are reviewed. After transfer, the Court of Appeal reached the same conclusions, and we again granted Hughes’s petition for review. We now reverse.
II. Discussion
The standards for reviewing an order granting a new trial are well settled. After authorizing trial courts to grant a new trial on the grounds of *412 “[e]xcessive . . . damages” or “[i]nsufficiency of the evidence,” section 657 provides: “[O]n appeal from an order granting a new trial upon the ground of the insufficiency of the evidence ... or upon the ground of excessive or inadequate damages, . . . such order shall be reversed as to such ground only if there is no substantial basis in the record for any of such reasons.” (Italics added.) Thus, we have held that an order granting a new trial under section 657 “must be sustained on appeal unless the opposing party demonstrates that no reasonable finder of fact could have found for the movant on [the trial court’s] theory.” (Jones, supra, 8 Cal.3d at p. 710.) Moreover, “[a]n abuse of discretion cannot be found in cases in which the evidence is in conflict and a verdict for the moving party could have been reached . . . .” (Id. at p. 711.) In other words, “the presumption of correctness normally accorded on appeal to the jury’s verdict is replaced by a presumption in favor of the [new trial] order.” (Neal, supra, 21 Cal.3d at p. 932.)
The reason for this deference “is that the trial court, in ruling on [a new trial] motion, sits ... as an independent trier of fact.” (Neal, supra, 21 Cal.3d at p. 933.) Therefore, the trial court’s factual determinations, reflected in its decision to grant the new trial, are entitled to the same deference that an appellate court would ordinarily accord a jury’s factual determinations.
The trial court sits much closer to the evidence than an appellate court. Even the most comprehensive study of a trial court record cannot replace the immediacy of being present at the trial, watching and hearing as the evidence unfolds. The trial court, therefore, is in the best position to assess the reliability of a jury’s verdict and, to this end, the Legislature has granted trial courts broad discretion to order new trials. The only relevant limitation on this discretion is that the trial court must state its reasons for granting the new trial, and there must be substantial evidence in the record to support those reasons. (Jones, supra, 8 Cal.3d at p. 710.)
Here, the trial court granted a new trial on the basis of insufficient evidence and stated reasons in support. Specifically, the court found (1) Lane and Villalpando had not established racism or retaliatory bias, (2) Lane’s promotion history was comparable to that of Whites, (3) Villalpando had not significantly supported Lane’s discrimination complaints, and (4) there was no indication of retaliation in management’s decision to assign someone other than Villalpando to lead his section after merging it with another section. These findings undermined the essential assertions that form the basis of the jury’s liability verdict, and therefore provided a sufficient basis for ordering a new trial as to liability.
Plaintiffs argue that the court’s specification of reasons is too summary and does not establish the requisite degree of deliberation. (See, e.g., *413 Miller v. Los Angeles County Flood Control Dist. (1973) 8 Cal.3d 689, 697-698 [106 Cal.Rptr. 1, 505 P.2d 193] [the trial court’s reasons may not be mere assertions of ultimate fact]; Scala v. Jerry Witt & Sons, Inc. (1970) 3 Cal.3d 359, 369-370 [90 Cal.Rptr. 592, 475 P.2d 864] [same].) Plaintiffs note in this regard that under section 657 the trial court must “weigh[] the evidence” and consider “the entire record.” But the trial court’s specification was adequate.
First, the specification is not a mere statement of ultimate facts, such as that Hughes did not discriminate or retaliate. Rather, the court also found that (1) Lane’s promotion history was comparable to that of Whites, (2) Villalpando had not significantly supported Lane’s discrimination complaints, and (3) Hughes had a good faith business reason for its management assignments. Moreover, at the beginning of the order, where the court was addressing both the grant of a new trial and the judgment notwithstanding the verdict, it found (1) Hughes did not instruct or force Villalpando to fabricate a poor job evaluation of Lane, (2) Hughes tried to find job opportunities for Villalpando, and (3) Hughes’s managers did not refuse to meet with Villalpando after he complained of discrimination.
Second, the context makes clear that, when the trial court stated briefly that it found insufficient evidence of racism and retaliatory bias, it was referring, by way of summary, to the more comprehensive findings it had already made in ruling on the judgment notwithstanding the verdict. Specifically, the court had previously found that (1) Hughes’s failure to promote Lane was due to Lane’s performance, not his race, (2) Lane’s statistical evidence was flawed because it did not indicate the qualifications of employees who were passed over for promotion, (3) Lane was not doing the work of an operations manager and therefore was not entitled to pay at that level, (4) Hughes provided Lane with job opportunities that he did not pursue, and (5) Hughes never terminated Lane. This cross-reference to findings located in a different part of the order was adequate to satisfy section 657. A court need not unnecessarily burden a new trial order by reiterating what it has already said at length with respect to another issue before it (Mercer v. Perez (1968) 68 Cal.2d 104, 115 [65 Cal.Rptr. 315, 436 P.2d 315]), so long as it makes clear to a reviewing court the basis for its decision. (Miller v. Los Angeles County Flood Control Dist., supra, 8 Cal.3d at p. 698, fn. 8 [permitting, the trial court to cross-reference another part of its order].) The trial court’s order did that here.
Third, the trial court described in detail why the evidence was insufficient to support the damage award, noting that (1) the expert witness who calculated plaintiffs’ wage loss made incorrect assumptions about their prospects *414 for promotion at Hughes, (2) Lane remained able to work despite the events at Hughes, (3) Villalpando remained able to work in a managerial position despite the events at Hughes, and (4) plaintiffs did not suffer significant emotional distress. These findings undermined the evidentiary foundation of the compensatory damage award and therefore provided sufficient basis for ordering a new trial as to compensatory damages. Finally, with respect to punitive damages, the court noted that the award was “excessive” and disproportionate to Hughes’s conduct and to the extent of plaintiffs’ injury and compensatory damages.
The record also supported the foregoing findings. We emphasize again that, so long as the outcome is uncertain at the close of trial—that is, so long as the evidence can support a verdict in favor of either party—a properly constructed new trial order is not subject to reversal on appeal. Here, the evidence could have supported a verdict in Hughes’s favor on all causes of action. Plaintiffs did not present irrefutable evidence that Hughes acted without good cause, in bad faith, or unfairly, or that it engaged in fraud, deceit, discrimination, or retaliation. Rather, plaintiffs’ allegations depended on circumstantial evidence—company-wide statistics, plaintiffs’ promotion and assignment histories and plaintiffs’ testimony describing their subjective impressions. Indeed, plaintiffs’ counsel conceded that the evidence included no “smoking handgun.”
The jury would have been entitled to reject the evidentiary inferences plaintiffs advocated and to disbelieve the testimony of plaintiffs’ witnesses in favor of Hughes’s evidence. For example, it would have been entitled to find, as the trial court did, that Hughes made its promotion and assignment decisions regarding Lane for good faith business reasons unrelated to his race and discrimination complaints. In this regard, Hughes managers testified that Lane’s removal from KU Band was unrelated to his race; that his performance slacked off after he left KU Band; that his promotion history was comparable to Whites at the company; and that Hughes tried to find Lane opportunities in the company.
Furthermore, the jury would have been entitled to accept the testimony of Hughes management that Hughes did not order Villalpando to fabricate negative reports about Lane; that it had a good faith business reason for choosing another employee to lead Villalpando’s section after merging it with a different section; and that it tried to find other opportunities for Villalpando in the company. Finally, the jury could have rejected plaintiffs’ evidence of damages and accepted instead the testimony of Hughes’s witnesses that plaintiffs were capable of working in managerial positions in the aerospace industry despite the events at Hughes, that aerospace jobs were available, and that neither plaintiff suffered serious emotional distress.
*415 Plaintiffs argue the new trial order is invalid because it borrows extensively from briefs filed by defendant. Section 657 provides that the court “shall not direct the attorney for a party to prepare either or both [the new trial] order and . . . specification of reasons” supporting it. We give the statute “a reasonable and practical construction” (Mercer v. Perez, supra, 68 Cal.2d at p. 115), bearing in mind its dual purposes—“to promote judicial deliberation before judicial action,” and make appellate review more manageable. (Id. at p. 113.) Section 657 bars a trial court from imposing upon counsel preparation of new trial orders; it does not prohibit a court from adopting material in a party’s brief. Indeed, if a court could not rely on the reasons advanced in the briefs, their utility would be undermined and they would serve little purpose. The “critical factor ... is whose mental processes are being used, not whose language is being employed.”[1] (Eltolad Music, Inc. v. April Music, Inc., supra, 139 Cal.App.3d at p. 707.) The trial court satisfies section 657 if its order indicates it deliberated over the issues; we have already concluded the order here complies with that standard.
The Court of Appeal asserted, in support of its decision to reverse the new trial order, that Hughes abandoned its request for a new trial on the issue of liability. Hughes’s letter brief in the Court of Appeal does not support this assertion. Rather, Hughes devoted eight pages of its 20-page brief to defending the new trial order as to liability.
The Court of Appeal also found Neal and Jones distinguishable. The court pointed out that in Neal the trial court denied a motion for a judgment notwithstanding the verdict, whereas here the trial court granted such a motion. The court added that in Jones the opinion did not indicate whether or not the case involved a motion for a judgment notwithstanding the verdict. The Court of Appeal was correct as to both points, but it did not explain why these distinctions have any significance here. We can think of none.
The Court of Appeal further determined it did not need to consider whether the evidentiary record supported the new trial order, “since we analyzed whether sufficient evidence supports the verdicts with respect to the judgment notwithstanding the verdicts.” Thus, the court continued to apply the same standard of review to the new trial order it applied to the *416 judgment notwithstanding the verdict. As we have said, this method of analysis was wrong. “[T]he presumption of correctness normally accorded on appeal to the jury’s verdict is replaced by a presumption in favor of the [new trial] order.” (Neal, supra, 21 Cal.3d at p. 932, italics added.)
Finally, the Court of Appeal noted that, “[w]hile the trial court’s order sets forth many factual reasons for granting a new trial, many of these facts do not take into account the conflicting evidence in support of the jury verdicts.” We reject the premise of this argument. Conflicting evidence—far from supporting the Court of Appeal’s decision to reinstate the jury’s verdict—actually places the new trial order beyond review so long as the conflict relates to the trial court’s reasons for granting a new trial. “An abuse of discretion [warranting reversal of a new trial order] cannot be found in cases in which the evidence is in conflict . . . .” (Jones, supra, 8 Cal.3d at p. 711, italics added.)
Hughes challenges the award of damages for future wage loss and also argues the Court of Appeal should have remanded for a new trial rather than modifying the punitive damage award. In light of our conclusion upholding the new trial order, we need not reach these issues. The new trial may result in a defense verdict, which would make them moot. Moreover, Hughes can argue these points during the course of the retrial and any subsequent appeals.
In conclusion, we reaffirm the deferential standards of review articulated in Neal and Jones and hold that the Court of Appeal did not apply these standards properly in this case.
Conclusion
The judgment of the Court of Appeal is reversed and the cause is remanded with instructions to affirm the new trial order.
George, C. J., Kennard, J., Baxter, J., Werdegar, J., and Chin, J., concurred.

“ ‘After all, counsel and the trial court work with the very same box into which all the evidence is placed. It would be silly to expect the court to use the equivalent of a Roget’s Thesaurus in “converting” any language used by counsel into language of its own. Such semantic, linguistic gymnastics could not have been intended by the Legislature. There has been an economy of time achieved by using some of the defense material, in the same manner an appellate court would use such material in an opinion.’ ” (Eltolad Music, Inc. v. April Music, Inc. (1983) 139 Cal.App.3d 697, 707 [188 Cal.Rptr. 858].)