Filed 7/20/20 (unmodified opinion attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| NORMAN ESTES,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>EATON CORPORATION,<br><br>    Defendant and Appellant. | A152847<br><br>(Solano County<br>Super. Ct. No. FCS048117)<br><br>**ORDER MODIFYING OPINION**<br>**NO CHANGE IN JUDGMENT** |

**BY THE COURT**:

It is ordered that the opinion filed herein on June 29, 2020, be modified as follows:

On page 12, in the first sentence of the first full paragraph which begins with the text "In particular," replace the phrase "Estes's expert Dr. Sheldon Rabinovitz" with the phrase "**Eaton's expert Dr. Sheldon Rabinovitz**."

There is no change in the judgment.

Dated:_____

_____
RICHMAN, Acting P.J.

1

Trial Court: Solano County Superior Court

Trial Judge:        Hon. Paul L. Beeman

Counsel:

Squire Patton Boggs, David M. Rice and Chassica Soo for Defendant, Appellant, and Cross-respondent.

Brayton Purcell, Alan R. Brayton, Richard M. Grant, Lloyd F. LeRoy and James P. Nevin for Plaintiff, Respondent, and Cross-appellant.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| NORMAN ESTES,<br>　　　Plaintiff and Appellant,<br>v.<br>EATON CORPORATION,<br>　　　Defendant and Appellant. | A152847<br><br>(Solano County<br>Super. Ct. No. FCS048117) |

　　　　In this asbestos-related personal injury lawsuit, a jury returned a defense verdict for an electrical component manufacturer and the trial court then granted the plaintiff a new trial on the ground of insufficient evidence. The manufacturer, Eaton Corporation (Eaton), now appeals the new trial order on multiple grounds and the plaintiff, Norman Estes (now deceased), by and through his successor Dionne Estes ("Estes"), has protectively cross-appealed from the judgment, arguing the jury's verdict is unsupported by substantial evidence.

　　　　We reverse the order granting a new trial because the trial court's explanation of its reasons for granting a new trial is not sufficient under Code of Civil Procedure section 657, and we reject Estes's substantial evidence challenge to the jury's verdict exonerating Eaton of liability for his mesothelioma. Accordingly, the judgment will be reinstated and affirmed.

1

# BACKGROUND

For nearly a decade, Norman Estes worked for the Navy as an electrician in two Bay Area naval shipyards, Hunters Point Naval Shipyard (from approximately 1966 to 1973) and then after Hunters Point closed down, Mare Island Naval Shipyard (for about a year, until 1974). Later, he developed asbestos-related mesothelioma.

It is undisputed that Estes's work in the shipyards in that era exposed him to what quite literally has been described as "snowstorms" of asbestos dust, from both his own work and a wide variety of maintenance and repair activities carried out in his vicinity by other shipyard workers. Estes stipulated he was exposed to asbestos-containing products manufactured or supplied to the Navy by approximately fifty companies. In this lawsuit, he also claimed he was exposed to harmful levels of asbestos contained in a product manufactured by another Navy supplier, Eaton's predecessor, Cutler-Hammer, Inc. Among other parts it supplied to the Navy, Cutler-Hammer manufactured an electrical component called an "arc shute" (or "arc shield"), a part resembling a hood or cover installed above electrical contacts to prevent current from jumping and causing sparks or electrical shorts. Estes contended he had been exposed to asbestos dust from Cutler-Hammer arc shutes at both Hunters Point and Mare Island when he and other electricians would clean them.

It is undisputed that Cutler-Hammer arc shutes contained asbestos. Eaton, though, contended Estes couldn't prove he ever worked with Cutler-Hammer's arc shutes (as opposed to arc shutes manufactured by other suppliers); and even if he did, that cleaning them would not release toxic levels of asbestos (because the asbestos was encapsulated in a hard plastic resin); and finally, that even if Estes was exposed to asbestos from Cutler-

2

Hammer arc shutes, that exposure was minimal and paled in comparison to his exposure to asbestos from dozens of other sources and did not increase his risk of developing mesothelioma at all, much less was it a substantial factor in increasing that risk.

The case against Eaton proceeded to a three-week jury trial. Estes presented five expert witnesses on liability, one damages expert and four lay witnesses. Eaton presented the testimony of one expert witness, who was on the stand for two days, and one lay witness. Both parties also presented deposition testimony of several other witnesses, including Mr. Estes.

The jury deliberated less than a day, returning a verdict the same day it was instructed. It found there was no design defect in Cutler-Hammer asbestos-containing products; there was no failure to warn of any defects in such products; and Cutler-Hammer[1] was not negligent. It did not reach questions on the verdict form asking whether Cutler-Hammer's conduct was a substantial factor in causing Estes's injury.

Judgment was entered in Eaton's favor, and Estes then moved both for judgment notwithstanding the verdict and for a new trial. The new trial motion asserted two grounds: juror misconduct and insufficiency of the evidence.

The trial court denied Estes's JNOV motion, because Eaton "presented evidence that the asbestos was encapsulated in the arc shutes. Although asbestos fibers would be released when work was done on the arc shutes, the asbestos fibers released were at ambient levels."

The court granted the new trial motion. We quote its ruling in full: "On a motion for new trial, the court may weigh all of the evidence, and after

_____

[1] The parties sometimes referred to Eaton and Cutler-Hammer interchangeably, as did the verdict form.

3

doing so, based on the entire record, find that the jury should have reached a different verdict. The court may draw reasonable inferences and resolve conflicts in the evidence that are contrary to the conclusions drawn by the jury. [¶] Upon weighing the evidence in this case under these standards, the court finds plaintiff presented sufficient credible evidence that he worked with arc chutes manufactured and supplied by Cutler-Hammer; the arc chutes contained asbestos; asbestos fibers from the arc chutes were released during plaintiff's work with them; and the levels of fibers released posed a hazard to plaintiff, and may have been a substantial factor in causing injury to him. The evidence submitted by Eaton was not sufficient to rebut this evidence submitted by plaintiff. Therefore, the court finds there was insufficient evidence for the jury to find, as it did, that there was no design defect, no failure to warn, and no negligence on the part of Eaton in this case."

These appeals followed.

## DISCUSSION

### I.

### *The Trial Court's Explanation of Its Reasons for Granting a New Trial Is Insufficient.*

Eaton challenges the order granting a new trial on three grounds, but it is necessary to address only the first. Eaton argues the order must be reversed because the trial court did not comply with its mandatory, statutory duty to adequately explain its reasoning. We agree.

When a trial court grants a new trial, it is required under section 657 of the Code of Civil Procedure to specify both the ground (or grounds) for granting the new trial and "the court's reason or reasons for granting the new trial upon each ground stated." (Code Civ. Proc. § 657.) "[S]trict compliance" with section 657 is required. (*Oakland Raiders v. National Football League*

4

(2007) 41 Cal.4th 624, 634 (*Oakland Raiders*).)  The court's statement of reasons "should be specific enough to facilitate appellate review and avoid any need for the appellate court to rely on inference or speculation."  (*Ibid.*)

In a line of decisions beginning with *Mercer v. Perez* (1968) 68 Cal.2d 104 (*Mercer*), the Supreme Court has explained what this requirement entails when, as here, a new trial is granted on the ground of insufficient evidence. "[T]he trial judge's specification of reasons 'must briefly identify *the portion of the record* which convinces the judge "that the court or jury clearly should have reached a different verdict or decision." ' " (*Stevens v. Parke, Davis & Co.* (1973) 9 Cal.3d 51, 60 (*Stevens*), quoting *Mercer*, at p. 116, italics added.) Although the court is not necessarily required to " 'cite page and line of the record, or discuss the testimony of particular witnesses,' nor . . . undertake 'a discussion of the weight to be given, and the inferences to be drawn from each item of evidence supporting, or impeaching, the judgment' " (*Scala v. Jerry Witt & Sons, Inc.* (1970) 3 Cal.3d 359, 370 (*Scala*); see also *Miller v. Los Angeles County Flood Control Dist.* (1973) 8 Cal.3d 689, 697 (*Miller*)), it "must briefly recite the respects in which [the court] finds the evidence to be legally inadequate." (*Mercer*, *supra*, 68 Cal.2d at p. 116.)  This level of specificity is required "in order to serve the twofold purpose of the specification requirement:  encouraging careful deliberation by the trial court before ruling on a motion for new trial, and making a record sufficiently precise to permit meaningful appellate review." (*Miller*, at p. 697.)  "[T]he trial court is required to state in its order the theory under which it concludes the jury should have returned a verdict for the moving party, and the order must be sustained on appeal unless the opposing party demonstrates that no reasonable finder of  fact could have found for the movant on that theory. . . . [¶] An abuse of discretion cannot be found in cases in which the evidence is in

conflict and a verdict for the moving party could have been reached *under the theory expressed in the order for a new trial.*" (*Jones v. Citrus Motors Ontario, Inc.* (1973) 8 Cal.3d 706, 710-711, italics added.)

The Supreme Court has reiterated time and again, "[t]he statement of reasons must refer to evidence, not ultimate facts."[2] (*Oakland Raiders*, *supra*, 41 Cal.4th at p. 635; see also *Scala*, *supra*, 3 Cal.3d at p. 367 [court must "briefly identify the deficiencies he finds in 'the evidence' or 'the record' or . . . 'the proof'—rather than merely in 'the issues' or 'the ultimate facts' "].) That is because simply explaining that a party has proved, or failed to prove, ultimate facts as to which it bore the burden is just another way of repeating the *ground* for the order granting a new trial: that the verdict is not supported by sufficient evidence. (See *Stevens*, *supra*, 9 Cal.3d at p. 61; *Miller*, *supra*, 8 Cal.3d at pp. 697-698.) Yet the trial court must state not just the ground upon which it grants a new trial but also its reasons. (See § 657.) Further, such a conclusory explanation does not accomplish the statute's purposes, because it does not reflect that the trial court carefully exercised its broad power to re-weigh the evidence nor does it facilitate appellate review of the court's ruling. (See *Scala*, *supra*, 3 Cal.3d at p. 366; see also *Mercer*, *supra*, 68 Cal.2d at pp. 112-113.)

---

[2] Ultimate facts are those "on which liability depends," as distinguished from both the evidence proving those facts (49A Cal. Jur.3d (2020) Pleading, § 16) and conclusions of law. (*Id.*, § 17.) They are the "facts constituting the cause of action." (*Id.*, § 16.) As one leading commentator describes it, "Lawyers and judges have struggled with these distinctions. 'Ultimate facts' are those that raise the issues on which the *right to recove*r depends—i.e., the essential elements of the cause of action." (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2020) ¶ 6:124.) Put another way, they are "[a]ll the facts that are *material* to the cause of action—i.e., the facts that make a difference to the outcome of the case." (*Ibid.*)

The Supreme Court's decision in *Miller v. Los Angeles County Flood Control District*, *supra*, 8 Cal.3d 689, provides a helpful illustration of the kinds of explanations that do and do not pass muster, because in striking down the new trial order in that case the Supreme Court also explained how the trial court there might have complied with section 657.

At issue in *Miller* was an order granting a new trial for the defendant on the ground of insufficient evidence, in a personal injury and wrongful death lawsuit. The underlying incident involved catastrophic flooding after a flood-control structure owned and maintained by the defendant overflowed. The trial court's order granting the defendant a new trial order said this: "[T]he only basis on which the District could be held liable to the plaintiffs under the facts of this case would relate to some condition of danger in the debris basin or dam creating it; the District is immune from any liability having to do with its design; the District completely and adequately discharged any obligation it had in the maintenance of the basin and dam as demonstrated by the overwhelming preponderance of the evidence.' " (*Miller*, *supra*, 8 Cal.3d at p. 696.)

*Miller* held this statement of reasons was insufficient under the standards announced in *Mercer* and its progeny. It explained: "The statement in the last clause that 'the District completely and adequately discharged any obligation it had in the maintenance of the basin and dam as demonstrated by the overwhelming preponderance of the evidence' is simply another way of saying that plaintiffs failed to prove the ultimate fact which they were required to establish. This 'reason' fails to identify *which aspects of the evidence* convinced the trial judge that the District had properly discharged its duty of maintenance. [¶] For example, the trial judge may have believed the testimony of the District's employees that the debris basin had

7

been cleaned out by the date of the accident.  If so, *review could have focused on the adequacy of that testimony*.  Alternately, the judge may have disbelieved plaintiffs' witnesses, a pair of young boys who allegedly viewed the basin two days before the accident and found it filled with mud.  *If that was the basis for the judge's reasoning, then it should have been stated, along with the reasons for disbelieving or otherwise rejecting the boys' testimony.*  Finally, the trial court may have determined that the District, by sending a crew of men to clean out the basin, had done all that was reasonably necessary to maintain it, and that the fact that such work was not completed by the date of the accident did not negate the reasonableness of the District's action.  [Citation].  *A statement to this effect would have drawn attention to the testimony relating to the efforts of the District's maintenance crew and the notice to the District of the imminent danger of flood.*"  (*Id.* at pp. 698-699, italics added, fn. omitted; see also, e.g., *Scala*, *supra*, 3 Cal.3d at pp. 367-369 [examining ways in which defective statement of reasons might have been properly drafted].)

By contrast, the Supreme Court's most recent decision addressing the specificity requirement in this context, *Lane v. Hughes Aircraft Co.* (2000) 22 Cal.4th 405 (*Lane*), upheld a statement of reasons as adequate.  Although the trial court's explanation for granting a new trial did not refer to any specific item of evidence, the trial court made highly detailed and particularized findings that the court held were sufficient.

In *Lane*, an employment discrimination case, a new trial was granted for the defendant employer on the ground of insufficient evidence (on both liability and damages) to support a jury verdict in favor of the two plaintiffs, a supervisor and an African American employee who claimed they were retaliated against and constructively discharged after the supervisor refused

to give the employee an unfavorable review. (*Lane, supra*, 22 Cal.4th at p. 410.) In parting ways with the jury's verdict, the trial court found the record contained insufficient evidence of discrimination and retaliation. (*Ibid.*).

The Supreme Court described the court's order this way: "[T]he trial court granted a new trial on the basis of insufficient evidence and stated reasons in support. Specifically, the court found (1) [employee] and [his supervisor] had not established racism or retaliatory bias, (2) [employee's] promotion history was comparable to that of Whites, (3) [his supervisor] had not significantly supported [employee's] discrimination complaints, and (4) there was no indication of retaliation in management's decision to assign someone other than [supervisor] to lead his section after merging it with another section." (*Lane, supra*, 22 Cal.4th at p. 412.) In addition, "at the beginning of the order, where the court was addressing both the grant of a new trial and the judgment notwithstanding the verdict, it found (1) [employer] did not instruct or force [supervisor] to fabricate a poor job evaluation of [employee], (2) [employer] tried to find job opportunities for [supervisor], and (3) [employer's] managers did not refuse to meet with [supervisor] after he complained of discrimination." (*Id.* at p. 413.) The Supreme Court held this explanation was adequate, because "[t]hese findings *undermined the essential assertions that form the basis of the jury's liability verdict*, and therefore provided a sufficient basis for ordering a new trial as to liability." (*Id.* at p. 412, italics added.)

The court rejected the plaintiffs' argument that the specification of reasons was too summary and did not reflect the requisite degree of deliberation insofar as the new trial statute requires trial courts to " 'weigh[] the evidence' and consider 'the entire record.' " (*Lane, supra*, 22 Cal.4th at

9

pp. 412-413.)  First, *Lane* said the trial court's reasoning was "not a mere statement of ultimate facts, such as that [employer] did not discriminate," but rather the trial court also made a number of findings.  (*Id.* at p. 413).  Second, the "brief statement" by the trial court "that it found insufficient evidence of racism and retaliatory bias" was simply a reference to "more comprehensive findings" contained in the trial court's ruling on the JNOV motion.  (*Ibid.*)  Among them was a finding that the employee's statistical evidence was flawed (for a reason the trial court had explained), and additional factual findings that went beyond those mentioned in the portion of the order granting a new trial.  (See *ibid.*)  Citing both *Mercer* and *Miller*, the court said "[t]his cross-reference to findings located in a different part of the order was adequate to satisfy section 657.  A court need not unnecessarily burden a new trial order by reiterating what it has already said at length with respect to another issue before it (*Mercer v. Perez* (1968) 68 Cal.2d 104, 115), so long as it makes clear to a reviewing court the basis for its decision.  (*Miller v. Los Angeles County Flood Control Dist.*, *supra*, 8 Cal.3d at p. 698, fn. 8 [permitting the trial court to cross-reference another part of its order].)  The trial court's order did that here."  (*Lane*, at p. 413.)

In this case, in ruling on Estes's new trial motion, the trial court had the power to reweigh the evidence and set aside the jury's verdict if it was convinced the verdict was against the weight of the evidence.  It sat " 'as an independent trier of fact' " and had broad discretion in ruling on the new trial motion.  (*Lane*, *supra*, 22 Cal.4th at p. 412.)  However, in doing so, as our Supreme Court has consistently held, it was required by the same statute that affords it such power and discretion, section 657, to explain its reasons in a manner that would reflect its careful exercise of its discretion and facilitate meaningful review.  (See *Lane*, at p. 412 ["The only relevant

10

limitation on this discretion is that the trial court must state its reasons for granting the new trial, and there must be substantial evidence in the record to support those reasons"].) Even a limited review of the record leads us to conclude the trial court did not explain itself adequately and that its order defies meaningful review.

After a nearly one-month trial, the trial court overturned the jury's verdict because "plaintiff presented sufficient evidence that he worked with arc chutes manufactured and supplied by Cutler Hammer; the arc chutes contained asbestos; asbestos fibers from the arc chutes were released during plaintiff's work with them; and the levels of fibers released posed a hazard to plaintiff, and may have been a substantial factor in causing injury to him" whereas "[t]he evidence submitted by Eaton was not sufficient to rebut this evidence submitted by plaintiff." This reasoning is little more than a conclusion that the plaintiff introduced sufficient evidence to prove that the arc chutes released hazardous levels of asbestos during Estes's encounter with them in the workplace. The explanation is too vague to enable meaningful review.

First, the trial court did not discuss any of the evidence that convinced it the jury should have reached a verdict in Estes's favor (see *Mercer*, *supra*, 68 Cal.2d at p. 116; *Stevens*, *supra*, 9 Cal.3d at p. 62)[3] nor, alternatively, did it make detailed factual findings comparable to those found adequate in *Lane*. We recognize the trial court "should not be burdened with giving a comprehensive review of the evidence." (*Van Zee v. Bayview Hardware Store* (1968) 268 Cal.App.2d 351, 360, discussed with approval, *Scala*, *supra*,

---

[3] That was not true in the authority cited by Estes, where the trial court specifically mentioned and rejected plaintiff's expert testimony as " 'completely lacking in probative force.' " (See *Meiner v. Ford Motor Co.* (1971) 17 Cal.App.3d 127, 134-135.)

3 Cal.3d at pp. 365-366.) But the Supreme Court has made clear it must say *something* about the evidence, or else, as in *Lane,* make factual findings that are specific and go well beyond ultimate facts. Here, lacking either from the trial court, we can only speculate as to what specifically the trial court concluded with regard to the evidence other than that it was insufficient. For example, Estes defends the ruling by citing the testimony of three experts (including one defense expert) and three other witnesses (plaintiff's former co-workers). We do not know whether the trial court, in siding with Estes, accepted the testimony of all of them (in whole or in part), some of them, or one. Nor is it apparent why the trial court considered Eaton's evidence inadequate. The court simply stated Eaton's evidence was "not sufficient to rebut" the evidence submitted by Estes, which is just another way of restating the court's overall conclusion. (See *Scala*, *supra*, 3 Cal.3d at p. 367.) The court did not, even briefly, "recite the respects in which [it found] [Eaton's] evidence to be legally inadequate" (*Mercer*, *supra*, 68 Cal.2d at p. 116); it did not discuss Eaton's evidence at all.

In particular, to cite one principal example, we do not know why the trial court rejected the opinion of Estes's expert Dr. Sheldon Rabinovitz that the Cutler-Hammer arc chutes were safe and did not release hazardous levels of asbestos fibers. It did not explain its "reasons for disbelieving or otherwise rejecting [Rabinowitz's] testimony." (*Miller*, *supra*, 8 Cal.3d at p. 698.) Did the court find Dr. Rabinovitz's reasoning flawed? Did it conclude he possessed comparatively less expertise than plaintiff's experts and discount the weight of his opinions? Did it find him not credible? The court's rejection of Eaton's evidence, across the board, does not identify any deficiency in Eaton's proof (see *Scala*, *supra*, 3 Cal.3d at p. 367); it simply declares without explanation that Eaton's evidence is deficient.

The court also did not explain why it concluded Cutler-Hammer arc shutes "may have been a substantial factor in causing injury to [Estes]." That is an issue the jury did not reach, and the court's failure to discuss any evidence or portion of the record on this point frustrates appellate review of its ruling.[4]

The vagueness of the trial court's explanation for granting a new trial also contributes to a related problem: we cannot tell which *theory* the court accepted as to how and when Estes was exposed in the workplace to asbestos dust from Cutler-Hammer products, which was one of several critical contested issues (leaving aside whether such exposure was at harmful levels). (See *Jones, supra*, 8 Cal.3d at p. 710.)

We have examined some portions of the record and, without being exhaustive, multiple theories were proffered (by our count, at least six). Estes introduced evidence that: (1) at two naval shipyards at different periods of time; (2) he personally worked on Cutler-Hammer products in a manner that would create asbestos dust (by scraping, sanding or cleaning the arc shutes) *and/or* he worked in close proximity to other electricians who worked on Cutler-Hammer arc shutes, which exposed him along with them to asbestos dust. There also was some evidence that asbestos fibers from arc shields could be released just at the touch of a finger,[5] some of which Estes

---

[4] No issue has been raised about the propriety of granting a new trial in the absence of a determination the plaintiff's evidence *is* sufficient to prove causation (not "may" be). We therefore do not address it.

[5] Some of this evidence was elicited during cross-examination of defense expert Dr. Rabinovitz concerning various studies including one involving a Cutler-Hammer product, and Estes referenced it in closing argument. In addition, Estes's expert, Dr. Dahlgren, testified that even just *installing* arc shutes can sometimes release asbestos fibers, although the

13

discusses in the respondent's brief.

Eaton disputed each of these theories of exposure. It presented extensive evidence rebutting them, evidence with which the parties are well familiar and is summarized in the briefs.[6] Yet it is unclear whether the trial court concluded Estes was exposed to asbestos dust from Cutler-Hammer products when he worked at Hunters Point, Mare Island or both; whether he was exposed by breathing in dust generated by other electricians working on Cutler-Hammer arc shutes in his vicinity and/or by working on Cutler-Hammer arc shutes himself; and, if the latter, whether he was exposed by sanding, scraping or cleaning the arc shutes or even just handling them. In other words, it is unclear on what specific factual issues the court concluded Eaton had failed to present sufficient rebuttal evidence.

Although as a back-up argument on appeal Eaton has attempted to

most significant exposure comes from removing an old one that had been used for some time.

[6] To cite just one example, on the factual issue as to whether Estes even came into contact with Cutler-Hammer arc shutes, Eaton presented evidence that Estes had been exposed to the products of many other companies, had named some of them in a previous suit covering the same time period in which he had not sued Cutler-Hammer or Eaton, and that in his deposition in this case he had only a faint and incomplete memory of the name Cutler-Hammer and did not recall the product associated with its name. It elicited on cross-examination of two of Estes's co-workers that they had not actually seen him working with Cutler-Hammer arc shutes. And the third co-worker, who testified he had been Estes's shop foreman, estimated Estes spent only about 20 percent of his time at Mare Island cleaning arc shutes and other components, and could not specify how frequently even that portion of Estes's work entailed working specifically with *Cutler-Hammer* arc shutes. He testified they used Cutler-Hammer components more than those of any other supplier, but significant aspects of that co-worker's testimony were contradicted by a defense witness, who testified not only that someone else was Estes's supervisor but also that Cutler-Hammer components were about fifth or sixth down on the list of Navy suppliers.

14

attack the court's ruling as unsupported by the record, in reality that is an impossible task. There is no way for Eaton to show that no reasonable finder of fact could have found for Estes on "the theory under which [the trial court] conclude[d] the jury should have returned a verdict," because the court did not say what that theory was. (*Jones*, *supra*, at 8 Cal.3d at p. 710.) Instead, Eaton has been forced to do precisely that which the cases say it—and this court—should not be required to do: scour the entire record of trial in an effort to evaluate every conceivable theory upon which the trial court *might* have decided to overturn the jury's verdict. (See *Mercer*, *supra*, 68 Cal.2d at pp. 114-115, 117; *Van Zee v. Bayview Hardware Store*, *supra*, 268 Cal.App.2d at p. 362.)

Unlike in *Lane*, moreover, the trial court's JNOV ruling does not clarify its explanation for granting a new trial but, on the contrary, exacerbates its inscrutability. The trial court denied JNOV for Estes because it recognized Eaton "presented evidence that the asbestos was encapsulated in the arc shutes. Although asbestos fibers would be released when work was done on the arc shutes, the asbestos fibers released were at ambient levels." Yet in granting a new trial for Estes, the court did not explain why that evidence was, in the words of its new trial ruling, "not sufficient to rebut [the] evidence submitted by plaintiff." We do not agree with Eaton that these rulings are inconsistent. The standards that apply to JNOV and new trial motions are different. (See Wegner et al., Cal. Practice Guide: Civil Trials and Evidence (The Rutter Group 2020) § 18:108; *Lane*, *supra*, 22 Cal.4th at pp. 411-412.) But we do agree that the JNOV ruling that Eaton's evidence was legally sufficient, coupled with the absence of any discussion as to why the court found that evidence was less weighty or less credible or for other reasons failed to rebut Estes's showing, makes the court's new trial ruling confusing

15

in a way that frustrates rather than facilitates our review. At a minimum, the court should have briefly explained why the evidence it concluded *was* sufficient to defeat JNOV on a principal contested issue was *not* sufficient to persuade the court, sitting as a thirteenth juror, to leave the jury's verdict intact.

In sum, the trial court's explanation for granting a new trial frustrates the dual purposes of section 657. It is not "specific enough to facilitate appellate review" (*Oakland Raiders*, *supra*, 41 Cal.4th at p. 634) but, rather, exemplifies the very problem the drafters of section 657 sought to do away with: it invites this court to search the entire record of trial to ascertain whether the order is supported by a substantial basis. (See *Mercer*, *supra*, 68 Cal.2d at pp. 116-117.) Furthermore, given its vagueness, we cannot be assured it was the product of careful deliberation as the Legislature envisioned. When, as here, a statement of reasons is insufficient, an appellate court cannot remand the case to permit the trial court to correct the error but must reverse the new trial order with the result that the judgment is automatically reinstated.[7] (*Miller*, *supra*, 8 Cal.3d at p. 699; *Mercer*, *supra*, 68 Cal.2d at pp. 122-124.)

We therefore turn to Estes's cross-appeal from the judgment.

---

[7] Estes has not argued the new trial order should be affirmed on the alternative ground it raised below of juror misconduct. That issue having been abandoned, we do not consider it.

## II.

### *The Evidence Did Not Compel a Verdict in Estes's Favor.*

In the cross-appeal, Estes challenges each of the jury's findings on the ground they are supported by "insufficient evidence":  the jury's finding of no design defect, no failure to warn of a product defect and no negligence.

In addition to addressing the merits of those contentions, Eaton argues Estes has forfeited these issues by failing to summarize all of the relevant trial evidence, both favorable and unfavorable, but merely presented an argumentative and one-sided presentation of the evidence favoring the plaintiff's position.  (See *Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881; *Schmidlin v. City of Palo Alto* (2007) 157 Cal.App.4th 728, 738.) Indeed, "the burden to provide a fair summary of the evidence 'grows with the complexity of the record.' "  (*Boeken v. Philip Morris, Inc.* (2005) 127 Cal.App.4th 1640, 1658.)  This requirement follows from the rule that we presume on appeal the evidence *is* sufficient to support the jury's factual findings, and the appellant must affirmatively demonstrate to us that it is not. (See *Foreman & Clark*, at p. 881.)

We agree with Eaton that Estes's factual summary leaves much to be desired.  Even Estes acknowledges his factual discussion is "one-sided," but contends that an understanding of the evidence can be gleaned by reading portions of the respondent's brief in combination with the cross-appellant's opening brief.  It is not technical quibbling to say this is not good enough. Estes's appellate counsel no doubt has a firm understanding of the evidence, presumably because they studied the entire trial record start to finish to analyze it for a potential claim of reversible error, and/or because the same law firm represented Estes at trial.  So it might not strike appellate counsel as difficult or burdensome to cobble together from various places in the

17

briefing a fair and complete picture of all of the trial evidence relating to the many contested issues. But this court does not occupy a similar position. The cross-appellant's opening brief does not even contain cross-references to those places in the respondent's brief where Estes contends a fair and accurate summary of the evidence can be found. A cross-appellant is bound by the same duty to fairly summarize the evidence as an appellant: that is, "[i]f one is going to make a 'the-facts-compel-that-I-win-as-a-matter-of-law' argument, one's brief must fairly state all the evidence." (*McCauley v. Howard Jarvis Taxpayers Assn.* (1998) 68 Cal.App.4th 1255, 1266 [holding cross-appellant waived sufficiency of the evidence argument]; accord, *Sprague v. Equifax, Inc.* (1985) 166 Cal.App.3d 1012, 1028 [appellate court can reject sufficiency of the evidence challenge where cross-appellant's brief cites only the favorable evidence].) So, we could deem these issues forfeited. But we have considered them on the merits and conclude there is no basis to disturb the jury's verdict.

As the plaintiff who failed to prevail before a jury, Estes faces an extremely high burden on appeal. In fact, both parties overlook precisely how high that burden is. "In a case where the trier of fact has determined that the party with the burden of proof did not carry its burden and that party appeals, 'it is misleading to characterize the failure-of-proof issue as whether substantial evidence supports the judgment.' [Citations.] Instead, 'where the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence *compels a finding in favor of the appellant as a matter of law*.' [Citation.] Specifically, we ask 'whether the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding." ' " (*Ajaxo, Inc. v.*

18

*E\*Trade Financial Corporation* (2020) 48 Cal.App.5th 129, 163-164 (*Ajaxo, Inc.*), italics added.) This is "an onerous standard" (*id.* at p. 164) and one that is "almost impossible" for a losing plaintiff to meet, because unless the trier of fact made specific factual findings in favor of the losing plaintiff, we presume the trier of fact concluded that "plaintiff's evidence lacks sufficient weight and credibility to carry the burden of proof." (*Bookout v. State ex rel. Dept. of Transportation* (2010) 186 Cal.App.4th 1478, 1486.)

Furthermore, we "must resolve all conflicts in the evidence in favor of the prevailing party and must draw all reasonable inferences in support of the trial court's judgment." (*Leung v. Verdugo Hills Hospital* (2012) 55 Cal.4th 291, 308 [affirming jury verdict].) " ' " 'Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.' " ' " (*Bloxham v. Saldinger* (2014) 228 Cal.App.4th 729, 750.) Indeed, "the jury is not required to believe the testimony of any witness, even if uncontradicted." (*Sprague v. Equifax, Inc.*, *supra*, 166 Cal.App.3d at p. 1028.)

Estes has failed to demonstrate the evidence compelled a verdict in his favor on any claim. It is unnecessary to examine all of the evidence bearing on each element of those claims, because one dispositive example suffices. On the disputed question whether Cutler-Hammer's arc shutes released harmful levels of asbestos when naval electricians worked with them, there was sharply conflicting expert testimony. Plaintiff's expert, Dr. Dahlgren, consulted studies about asbestos dangers in arc shutes *not* manufactured by Cutler-Hammer, and opined that they did. Eaton's expert, Dr. Rabinovitz, tested Cutler-Hammer arc shutes in a controlled environment, and opined

19

that they didn't.  On appeal, Estes criticizes Dr. Rabinovitz's opinion for various reasons but cites no legal authority requiring us to reject it as insubstantial.  Estes also cites no legal authority requiring us to credit Dr. Dahlgren's opinion as " ' "uncontradicted and unimpeached" ' " and (2) " ' "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding." ' " (*Ajaxo, Inc.*, *supra*, 48 Cal.App.5th at pp. 163-164.)  Without delving into the particulars, it suffices to say that Dr. Dahlgren's opinion was no more ironclad than Dr. Rabinovitz's opinion was of no weight whatsoever and unworthy of credence.  The jury was certainly free to side with Dr. Rabinovitz's opinions and conclusions over Dr. Dahlgren's.  And we are not free to re-weigh this evidence.

## DISPOSITION

The order granting a new trial is reversed, and the judgment is affirmed.  Appellant/Cross-Respondent Eaton shall recover its costs.

20

_____

STEWART, J.

We concur.

_____

RICHMAN, Acting P.J.

_____

MILLER, J.

_Estes v. Eaton Corp._ (A152847)

Trial Court:Solano County Superior Court

Trial Judge:        Hon. Paul L. Beeman

Counsel:

Squire Patton Boggs, David M. Rice and Chassica Soo for Defendant, Appellant, and Cross-respondent.

Brayton Purcell, Alan R. Brayton, Richard M. Grant, Lloyd F. LeRoy and James P. Nevin for Plaintiff, Respondent, and Cross-appellant.